### STERNBERG MFG. CO. v. MILLER, DU BRUL & PETERS MFG. CO.

(Circuit Court of Appeals, Eighth Circuit. April 11, 1908.)

No. 2,655.

1. TRADE-MARKS AND TRADE-NAMES—NAME USED TO DESIGNATE PATENTED ARTICLE—EFFECT OF EXPIRATION OF PATENT.

Where complainant manufactured and sold a cigar mold under a patent, and adopted the name "Vertical Top" to designate such mold alone in its literature, catalogues, etc., which it used during the life of the patent, on its expiration the name, as well as the article, became free to the public, and complainant could not perpetuate its exclusive right thereto by registering it as a trade-mark.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 15.]

2. SAME—UNFAIR COMPETITION.

Evidence *held* to entitle complainant to an injunction restraining defendant from unfair competition in making and selling a cigar mold des-

ignated by the same name as one made by complainant, and in using similar cuts in its catalogues representing cigar maker's tools, without stamping its name upon such molds and plainly indicating on the cuts that it, and not complainant, was the manufacturer of the articles represented thereby.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 106.

Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

Appeal from the Circuit Court of the United States for the Southern District of Iowa.

W. J. Roberts, for appellant.

Hervey S. Knight and William C. Howell, for appellee.

Before HOOK and ADAMS, Circuit Judges, and PHILIPS, District Judge.

PHILIPS, District Judge. This is a bill in equity by the appellee, an Ohio corporation (hereinafter designated the complainant), to enjoin the appellant, an Iowa corporation (hereinafter designated the defendant), from infringing a trade-mark, known as the "Vertical Top," used on cigar molds, claimed to have been adopted by the complainant as early as 1876. After the complainant had taken evidence in chief in support of this bill, it filed a supplemental bill, charging the defendant with unfair competition in business.

The Miller & Peters Manufacturing Company was organized in 1873. Its name was changed in 1880 to the Miller, Du Brul & Peters Manufacturing Company. Its principal place of business was at Cincinnati, Ohio, with branches in other cities. The defendant had been in business since 1893, as a copartnership under the name of William Sternberg & Co. until 1895, when it was incorporated under its present name. On April 4, 1876, Frederick C. Miller, a member of said firm of Miller & Peters Manufacturing Company, obtained letters patent No. 175,573, entitled "improvement in cigar molds." The specifications, in so far as pertinent to this inquiry, are as follows:

"This invention relates to cigar molds adapted for pressing a number of bunches of tobacco into cigar shape, the bunches being placed in deep matrices, and simultaneously pressed into the required form by the operation of a series of plungers or cups. My improvement consists: First. In so constructing the plungers or cups, which are made of wood like the rest of the mold, that the grain of the wood shall run vertically—that is, at right angles to the face of the backing to which the plungers are attached. This enables me to obtain, not only durable, but also sharp, edges along the sides of the concaved face of the plungers, which sharp edges are of the utmost importance to the proper action of the mold, and which, if formed on plungers having the grain of the wood running longitudinally, in accordance with the common method of construction, do not possess the requisite strength and durability. Second. Of a peculiar method of securing the plungers or cups to their backing, whereby a strong attachment and a perfect register with the matrices is obtained. This method consists in making the matrices somewhat deeper than required; then gluing the backing to the face of the matrix-board; then sawing the block thus formed into two parts on a line a little below the top of the matrix-board, so that a thin strip of it will remain attached to the backing for the plungers; and, finally, inserting the plungers or cups in the cavities in this thin strip of the matrix-board adhering to their backing, and

securing them in proper manner. Third. In the combination, with the matrix-board, of one or more bars for expelling the bunches after they have been pressed. The bar is seated in a longitudinal groove across the matrices, its upper edge having notches corresponding to the cross-sectional contour of the matrices."

Its first claim is as follows:

"1. The plunger or cup of a cigar mold made of wood, the grain of which runs perpendicularly to the plane of the cup, substantially as specified."

It will be noticed that the invention specified in the claim is rather upon the plunger or cup (top) of the individual mold than the series. While it recites that the invention pertains to cigar molds used by "the operation of a series of plungers or cups," the claim specifies the single plunger or cup as the real improved device. Molds embodying the improvement were thereafter manufactured and marketed by the Miller & Peters Manufacturing Company under the designation of the "Creaseless Vertical Top Cigar Mold." Its use passed to the complainant under the abbreviated name of the "Vertical Top" mold for cigars, and was extensively advertised by the complainant. Without stating in detail the evidence, suffice it to say that during the life of the patent the words "Vertical Top" became associated with the manufactured article as descriptive of its character and quality, indicating the complainant's best grade of mold for making cigars. If it was descriptive or indicative of the grade or quality of the cigar mold, it could not be regarded as a trade-mark, especially during the life of the patent. Paul on Trade-Marks, page 47, §§ 27, 28; Columbia Mill Co. v. Alcorn, 150 U. S. 460, 14 Sup. Ct. 151, 37 L. Ed. 1144; Raymond v. Royal Baking Powder Co., 85 Fed. 231, 236, 29 C. C. A. 245; Centaur Co. v. Heinsfurter et al., 84 Fed. 955, 28 C. C. A. 581.

The specification of the patent itself shows that the two halves of the mold at the point of contact should be made of hard wood in order to withstand great pressure. The upper half is made with the grain of the wood running vertically, up and down; the edges, owing to the vertical grain of the wood, being stronger than if it were made of iron, according to the complainant's testimony. It was stated in the circular literature issued by the complainant that no nails, staples, or pegs were used in the construction of "our creaseless Vertical Top molds." The circular further stated: "Our Vertical Top creaseless mold is not only the best, but the cheapest, because it will last twice as long as any ordinary mold and will produce far better and paying results." In short, the very claimed invention of the Vertical Top mold was to remedy the hitherto ill-fitting tops with their thick edges; and the evidence further discloses that the term "Vertical Top" was employed to indicate the best quality of mold manufactured by the patentee, as distinguished from the "Flange Top" manufactured by the complainant as an inferior article.

When this patent expired in 1903, the complainant clearly enough, as we think, sought to perpetuate its monopoly by registering the name "Vertical Top" as a trade-mark. In the leading case of Singer Manufacturing Co. v. June Manufacturing Company, 163 U. S. 169,

16 Sup. Ct. 1002, 41 L. Ed. 118, after the expiration of the Singer Manufacturing Company's patent, it sought to perpetuate its monopoly by adopting and laying claim to the exclusive use of the word "Singer" as a trade-mark, which term had become designative of the machine manufactured and sold by the company during the life of the patent. The court held that the designation of the machine as "Singer" during the existence of the patent indicated merely the class and type of the machine made by the company; that it constituted "the generic description, conveying to the public mind the machine made by it." Mr. Justice White further said:

"It is self-evident that on the expiration of the patent the monopoly created by it ceases to exist, and the right to make the thing formerly covered by the patent becomes public property. It is upon this condition that the patent is granted. It follows, as a matter of course, that on the termination of the patent there passes to the public the right to make the machine in the form in which it was constructed during the patent. * * * It equally follows from the cessation of the monopoly and the falling of the patented device into the domain of things public, that along with the public ownership of the device there must also necessarily pass to the public the generic designation of the thing which has arisen during the monopoly, in consequence of the designation having been acquiesced in by the owner, either tacitly, by accepting the benefits of the monopoly, or expressly, by his having so connected the name with the machine as to lend countenance to the resulting dedication. To say otherwise would be to hold that, although the public had acquired the device covered by the patent, yet the owner of the patent or the manufacturer of the patented thing had retained the designated name, which was essentially necessary to vest the public with the full enjoyment of that which had become theirs by the disappearance of the monopoly; in other words that the patentee or manufacturer could take the benefit or advantage of the patent upon the condition that at its termination the monopoly should cease, and yet, when the end was reached, disregard the public dedication and practically perpetuate indefinitely an exclusive right. The public having the right on the expiration of the patent to make the patented article and to use its generic name to restrict this use, either by preventing its being placed upon the articles when manufactured or by using it in advertisements or circulars would be to admit the right and at the same time destroy it."

This was followed and applied by Mr. Justice Brewer, speaking for this court, in Centaur Co. v. Heinsfurter et al., supra. In that case one Pitcher obtained letters patent No. 77,758, for a composition to be employed as a cathartic, or substitute for castor oil; and, while the word "Castoria" did not occur in the specifications, it was claimed to have been adopted and used as a trade-mark during the life of the patent, and was attempted to be exclusively continued in use thereafter. But it was held that on the expiration of the patent such name became public property, and its use by another, without unfair competition, did not entitle the complainant to relief against the use of the word "Castoria" by the defendant for its manufactured composition.

Counsel for complainant quite ingeniously attempts to differentiate the case at bar from the foregoing by the suggestion that the words "Singer" and "Castoria" describe the articles patented, and therefore necessarily became generic terms. But the essence of the ruling in the foregoing cases is that the patent conferred only the right of exclusion to manufacture and sell the article, and not the appropriation of any particular name, whether it was merely arbitrary or sug-

gested by the thing itself, and that after the expiration of the patent, not only the right to manufacture and sell the patented article, but also to use the particular name by which the patentee had designated it, passed to the public. Mr. Justice Brewer said:

"It is true that during the life of a patent the name of the thing may also be indicative of the manufacturer, because the thing can then be manufactured only by the single person; but, when the right to manufacture and sell becomes universal, the right to the use of the name by which the thing is known becomes equally universal. It matters not that the inventor coined the word by which the thing has become known. It is enough that the public has accepted it as the name of the thing, and thereby the word has become incorporated as a noun in the English language and the common property of all."

Having regard to the philosophy of the principle, it can make no difference that the Centaur Company designated its moderate imitation of castor oil by the name of "Castoria," and that the complainant should have designated its manufacture as "Vertical Top," because of the manner in which the grain ran into the wood constituting the top. Notwithstanding the studied effort of Mr. Du Brul in his testimony to evade the fact, his cross-examination compels the conclusion that the words "Vertical Top" were employed in his manufacture and trade to designate a superior quality in construction as compared with the "Flange Top" employed in the manufacture and sale of cigars.

The Circuit Court found the issues for the complainant, whereby it not only affirmed the claim of the complainant to the trade-mark, but the language of the decree is so broad and comprehensive as to perpetuate the exclusive right of the complainant to manufacture the mold and all the tools, implements, and machinery connected therewith. After sustaining the trade-mark, the decree adjudged:

"That the defendant, its officers, agents, employés, etc., are hereby perpetually enjoined and restrained from making or selling or offering for sale cigar makers' presses, bundlers, tools, machinery, and accessories to the cigar makers' trade, in substantially exact imitation of the presses, bundlers, tools, machinery and accessories to the cigar makers' trade manufactured by the complainant and having a characteristic shape and design, and from copying or reproducing in its catalogue, circulars, and other printed advertising matter the cuts, figures, illustrations, or representations originated, produced, and used by the complainant in its circulars and catalogues in advertisement of the presses, bundlers, tools, machinery, and accessories to the cigar makers' trade manufactured and sold by the complainant."

Was the complainant entitled to relief on the supplemental bill charging the defendant with unfair competition in business? As the tools, implements, and machinery employed by the complainant, in connection with its manufacture of the molds, were not covered by any patent grant, they were free to the public to manufacture and use, even in exact imitation of those employed by the complainant. Singer Manufacturing Co. v. June Manufacturing Co., supra; Lamb et al. v. Grand Rapids School Furniture Co. (C. C.) 39 Fed. 474. The only limitation the law places upon the right of the defendant to manufacture and sell the molds and to manufacture and use the tools, implements, etc., like those hitherto employed by the complainant, is that he shall not so exercise it as to impose his manufactured article

upon the public as that of the complainant's product. As expressed by Mr. Justice White, in the Singer Manufacturing Co. Case, the right is "accompanied with the obligation of so exercising it as not to destroy the property of others, and also in such a manner as not to deceive the public."

When the defendant began the manufacture and sale of the "Vertical Top" mold in Iowa, although it had the right, it did not stamp upon or otherwise mark the molds manufactured by it with the words "Vertical Top"; but it distinctly stamped its own name thereon, indicating the origin of manufacture. Later it moved its business to Milwaukee, Wis., where its factory, with its stamps, etc., were destroyed by fire. Mr. Sternberg in his testimony, assigned to that misfortune the reason for not stamping its molds made at Milwaukee afer the fire with its name, intending to do so when it procured the stamp. This omission covered a period of about a year. This was unimportant, however, under the decisions hereinbefore cited, in view of the fact that it did not stamp its molds with the words "Vertical Top."

The only basis for complaint of unfair competition is reduced to the pamphlets and literature sent out by the defendant, in which it is claimed it so closely followed the cuts, figures, and the order of their occurrence in the display of like publications by the complainant as not to sufficiently distinguish one from the other. It is true the evidence on behalf of the defendant, which was uncontradicted, was that all of the tools, implements, machinery, etc., published by it, were of its manufacture. It must also be conceded to the defendant that the complainant's evidence fails to show affirmatively that any purchaser was thereby deceived into the belief that he was purchasing the goods of the complainant's manufacture. There was some indicia about the pamphlets, etc., sent out by the defendant with the names on them, from which it might, if seen, be inferred that the cuts, figures, etc., were manufactured by it. Without entering into a detailed delineation, we are of the opinion that the close copy in the pamphlets and literature published by the defendant, and the order of the arrangement of the closely imitated cuts of tools, implements, and machinery of the complainant, were such as to impose upon the defendant, in fair, honorable competition, the obligation of more distinctly indicating that the articles as pictured and described were of its manufacture, so as to reasonably advise the public thereof. This the defendant was not sufficiently doing at the time the supplemental bill was filed; and the evidence does not disclose a declared purpose on its part to make any change in this respect.

But it is apparent, from the part of the decree above quoted, that it goes beyond the limitations imposed by the law. It goes to an extent as if the complainant had an exclusive monopoly of the right to manufacture and use "the tools, machinery, and accessories to the cigar makers' trade."

The decree of the Circuit Court must therefore be reversed, and the case is remanded, with directions to set aside and vacate the decree herein, and in lieu thereof to enter a decree dismissing the bill of complaint as to the claimed trade-mark right to the words "Vertical

Top," and on the supplemental bill to enter a decree enjoining the defendant from manufacturing and placing upon the market the "Vertical Top" cigar mold, without plainly stamping thereon, or otherwise plainly indicating, the name of the defendant as the manufacturer thereof, and also from copying or reproducing, in its published catalogues, circulars, or other printed advertising matter, the cuts and figures of tools, implements, and machinery produced and published by the complainant connected with its trade, without distinctly indicating therewith, so as to reasonably advise the public, the fact that the same are of the manufacture and use of the defendant.

There is no occasion for a reference to the master. "Damnum absque injuria."