## COLLIS CO. v. CONSOLIDATED MACHINE TOOL CORPORATION OF AMERICA.

### No. 8794.

Circuit Court of Appeals, Eighth Circuit.

July 18, 1930.

Rehearing Denied Aug. 29, 1930.

Ephraim Banning, of Chicago, Ill. (John D. Rippey and Lawrence C. Kingsland, both of St. Louis, Mo. on the brief), for appellant.

Harold E. Stonebraker, of Rochester, N. Y., for appellee.

Before KENYON, BOOTH, and GARDNER, Circuit Judges.

GARDNER, Circuit Judge.

In this case the Consolidated Machine Tool Corporation, appellee, brought suit in equity against the Collis Company, appellant, to restrain that company from making use of the word "Magic" on or in connection with a tool known as a chuck. The parties will be referred to as they appeared in the lower court. The plaintiff alleged in its bill of complaint that its predecessor, Modern Tool Company, in 1901 adopted and applied the trade-name "Magic" to drill chucks which it was then manufacturing and selling throughout the United States, and that it continued the manufacture and sale of these chucks with the trade-mark "Magic" applied thereto until about the 14th of July, 1922, and that during said period the said trade-mark came to mean and signify to the purchasing public a drill chuck manufactured by Modern Tool Company of Erie, Pa.; that on or about July 14th, 1922, the plaintiff, by purchase, acquired from the Modern Tool Company its entire business, including the equipment, good will, and trade-marks, and that since said date the plaintiff continuously manufactured and sold drill chucks throughout the United States with the trade-mark "Magic" applied thereto, so that, at the time of the commencement of the action, this trade-mark had come to mean to the purchasing public a drill chuck manufactured by the plaintiff and its predecessor, Modern Tool Company; that the plaintiff and its predecessor had expended large sums of money advertising this drill chuck under the trade-mark of "Magic," and had always built drill chucks of the highest grade, best design, and greatest efficiency of any in their line, and, as a result of such advertising and of the high quality of the drill

chucks, these chucks had acquired a high reputation, and the trade-mark was of substantial value; that, after the chucks of plaintiff and its predecessor had become widely known and acquired a high reputation under the trade-mark "Magic" the defendant commenced to manufacture and sell, without permission or license of the plaintiff, drill chucks under the trade-mark "Magic," marking said trade-mark directly upon the chucks, for the purpose of profiting by and taking unfair advantage of plaintiff's chucks; that the sale of defendant's chucks under the trade-name "Magic," and the featuring by the defendant of the trademark "Magic" in its advertising in conjunction with chucks, had been, was, and would continue to be productive of confusion in the trade, to plaintiff's damage. It is further alleged that plaintiff and its predecessor had for many years manufactured and sold chucks of distinctive shape, design, and appearance, and that the defendant, without consent of the plaintiff, began and at the time of the commencement of this suit was continuing, wrongfully to manufacture and sell chucks identical in shape, design, and appearance with the chucks manufactured and sold by the plaintiff, with the intent and purpose of deceiving the purchasers of chucks. It is then alleged that the defendant had made large profits and caused the plaintiff great loss and damage.

In its answer, the defendant admits that the plaintiff and its predecessor had been manufacturing and selling, since 1901, drill chucks referred to as "Magic," denies substantially all the remaining allegations of the complaint, and alleges that, when plaintiff's drill chucks, referred to as "Magic," were first produced and sold in 1901, and continuously thereafter, they were so produced and sold under protection of letters patent No. 629988, granted February 11, 1902, the patent being known as the Davis patent, which had been acquired by plaintiff's predecessor; that chucks so designated under the name or style of "Magic" were in construction, type, and characteristics unlike any other drill chucks which previously, then, or throughout the term of said letters patent, were offered for sale, in consequence of which the name "Magic" in relation to the said drill chucks meant and was understood generally by the buying public to mean a chuck having the peculiar, special patented features which permitted a speedy and quick change of tools; that the defendant continuously, since the month of January, 1926, had manufactured and sold a quick change chuck, to which it applied the term "Magic Type," the said chucks having been marked "Magic Type Chucks, Collis Co., Clinton, Iowa," and sold and distributed in various parts of the United States; that its chuck embodied the inventive features on which for seventeen years the original producers of Magic chucks, and their successors, were protected by the Davis patent, and that in construction, type, and characteristics the chuck manufactured and sold by it was substantially like plaintiff's Magic chuck; that the name or term "Magic," which had been adopted and used since 1901 to designate the patented drill chuck of the plaintiff, had become identified inseparably with only those chucks which embody the Davis invention, and since the expiration of the patent had continued as the only term of exact description of drill chucks of the kind and type which theretofore were produced by authority conferred under the said patent, in consequence of which defendant contended that, along with the right to make, use, and sell the said drill chucks, upon the expiration of the letters patent, the public at large had acquired also the right to use the name "Magic" as a term by which to designate the drill chucks having said patented features and as a term by which to distinguish said drill chucks from all others of different kind, type, and characteristics, and that no one member of the public was entitled to any special advantages or privileges in and to the name "Magic" in connection with drill chucks. It is also alleged that the Magic drill chucks of the plaintiff are lacking in any distinctive shape, design, or appearance, and that such shape, design, and appearance as is embodied in said drill chucks is the result solely of utilitarian considerations, and that the shape, design, and appearance characterizing the defendant's chucks have been determined solely by utilitarian considerations.

It will be observed that under these pleadings the issue was quite limited. It appears, either by admission in the pleadings, or by proof, that the plaintiff's chuck was protected by the Davis patent which expired in 1919. During the life of the patent, there appeared on these chucks as manufactured by plaintiff and its predecessor, the word "Magic." There also appeared the words, "U. S. Pat. Feb. '02," and the words, "Modern Tool Co., Erie, Pa., U. S. A." Later the printed matter appearing on the chuck was changed so as to read, "Magic Chuck, Patented. Modern Tool Co., Erie, Pa., U. S. A." The chuck itself bore the word "Pat." or "Patented."

For at least one year after the expiration of the patent and subsequent to that time, in all advertising matter used by the plaintiff's predecessor up to the time of commencement of this suit the display advertisements showed a picture of this chuck, invariably exhibiting in the picture words appearing thereon, indicating that the tool was protected by patent, so that, while the word "patented" was finally eliminated from the tool itself in 1920, it was never eliminated from the advertising matter widely employed by plaintiff and its predecessor. It is admitted by the pleadings and established by the proof, that the defendant, in 1926, began to manufacture chucks similar in all respects to that of the plaintiff, and that on each tool appeared the words "Magic Type," together with the name "The Collis Company."

■ On this appeal, as in the lower court, the defendant contends that, when the Davis patent expired in 1919, the right of plaintiff and its predecessor to use the word "Magic" in connection with its chuck also expired, and in support of this contention the case of Singer Manufacturing Co. v. June Manufacturing Co., 163 U. S. 169, 16 S. Ct. 1002, 1008, 41 L. Ed. 118, is cited. The Singer Case involved the use of the word "Singer" by the Singer Manufacturing Company in connection with sewing machines manufactured by it under certain patents. On the expiration of the patents, the Singer Company contended that it still had a valid trade-mark in the word "Singer." In the course of the opinion it is said:

"It is self-evident that on the expiration of a patent the monopoly created by it ceases to exist, and the right to make the thing formerly covered by the patent becomes public property. It is upon this condition that the patent is granted. It follows, as a matter of course, that on the termination of the patent there passes to the public the right to make the machine in the form in which it was constructed during the patent. We may therefore dismiss without further comment the complaint as to the form in which the defendant made his machines. It equally follows from the cessation of the monopoly and the falling of the patented device into the domain of things public that along with the public ownership of the device there must also necessarily pass to the public the generic designation of the thing which has arisen during the monopoly in consequence of the designation having been acquiesced in by the owner, either tacitly, by accepting the benefits of the monopoly, or expressly by his having so connected the name with the machine as to lend countenance to the resulting dedication. To say otherwise would be to hold that, although the public had acquired the device covered by the patent, yet the owner of the patent or the manufacturer of the patented thing had retained the designated name which was essentially necessary to vest the public with the full enjoyment of that which had become theirs by the disappearance of the monopoly. In other words, that the patentee or manufacturer could take the benefit and advantage of the patent upon the condition that at its termination the monopoly should cease, and yet, when the end was reached, disregard the public dedication and practically perpetuate indefinitely an exclusive right.

"The public having the right, on the expiration of the patent, to make the patented article, and to use its generic name, to restrict this use, either by preventing its being placed upon the articles when manufactured or by using it in advertisements or circulars, would be to admit the right, and at the same time destroy it. It follows, then, that the right to use the name in every form passes to the public with the dedication resulting from the expiration of the patent."

To the same effect, see Holzapfel's Compositions Co. v. Rahtjen's American Composition Co., 183 U. S. 1, 22 S. Ct. 6, 46 L. Ed. 49; Sternberg Mfg. Co. v. Miller, Du Brul & Peters Mfg. Co. (C. C. A.) 161 F. 318; Centaur Co. v. Heinsfurter (C. C. A.) 84 F. 955; Nims on Unfair Competition (3d Ed.) 545.

■ To escape the effect of this principle, the plaintiff contends that the name "Magic" is not generic, but that it had come to mean a drill chuck manufactured by the Modern Tool Company of Erie, Pa. On the other hand, the defendant contends that the name is generic, and means and was understood by the public to mean a chuck having the peculiar, special patented features which permitted a speedy and quick change of tools. On this issue there is in the record both the oral testimony of certain witnesses and what may be referred to as the acts of the parties. The plaintiff produced certain of its customers who testified by deposition that the name of the manufacturing corporation associated with the name "Magic," when applied to chucks, was the Modern Tool Company. One witness testified that if he ordered a Magic chuck he would expect to receive the product of the Modern Tool Company. Witnesses called on behalf of the defendant testified that they understood the word "Magic," in

relation to a chuck, to denote a quick-change type of chuck. These witnesses testified that they knew of the characteristics of the chuck for a long time before they knew who manufactured it. The study of the oral testimony on this question is largely psychological. At most it simply expresses the opinion of the witnesses, and that opinion is confined to the mental impression which they personally entertained. It could not in its nature be broader than that. By what psychological processes these witnesses reached their conclusions, or just why this trade-mark used in connection with this device made the impression on their minds which they say it did does not very satisfactorily appear. In the final analysis, these expressions of opinion as to mental reactions produced by objective facts or conditions must be tested by the facts and conditions forming the basis of such impression, and hence it is necessary to consider the surrounding facts and circumstances.

There is nothing in the name itself to suggest the name of its manufacturer. If the manufacturer of this article manufactured only chucks, and they all bore the name "Magic," then it could readily occur that the name might have acquired a secondary significance and be suggestive of the manufacturer. It appears, however, that the plaintiff and its predecessor manufactured a great variety of tools, none of which, except this chuck, bore this trade-mark. There are certain well-known trade-marks of manufacturers, wholesalers, and distributors used on large lines or practically all of their products or goods, so that whenever such a trade-mark is seen it at once suggests the source from which the product emanated, but, where the manufacturer or distributor selects one product out of a great variety and places upon it a trade-mark, it would seem more likely that this trade-mark designated or characterized this particular tool or implement, rather than suggested its manufacturer. This thought is further emphasized by a reference to the advertising matter used by the plaintiff and its predecessor. For instance, in connection with certain advertisements displaying the picture of this chuck, appeared the following: "Change your tool without stopping your machine. With the 'MAGIC' Chuck, you lift the ring, out drops the collet, in goes the new tool, on goes the machine." Again in a similar advertisement, appears the following: "Simply lift the ring—out drops the collet, in goes the new tool, on goes the machine. Just as easy as it sounds." Again: "Thirty

times as fast as by the old way. Magic Chucks are not only wonderful time savers, but they speed up production. They virtually turn single spindle machines into multiples, and often they save the purchase of additional costly machines." If this descriptive matter is reliable, the name "Magic" would seem to be an appropriate one as characterizing the functioning of the tool itself. As a further indication that the name "Magic" was not employed as indicating the source from which this tool came, it is to be noted that in the advertising matter employed by the plaintiff and its predecessor, the name of this chuck seems to have been changed. Up to about the 31st of July, 1919, it was generally advertised as the Magic chuck. At that time this advertising matter was changed to read, "Modern Magic Chucks." The word "Modern" was given great prominence and emphasis. This appears through the years 1920, 1921, and 1922. In the catalogues of various distributing companies, subsequent to 1919, the tool is frequently listed as "Modern Magic Chucks," whereas in earlier years, it was listed as "Magic Chuck." The word "Modern" is given emphasis in journals of January, 1924, December, 1927, and January, 1929. Now, the word "Modern" manifestly had some reference to the name of the manufacturer. This seems to have been the word which plaintiff adopted as indicating the name of the maker, and retained the word "Magic" as characterizing the tool. It is true that the tool itself retained the name "Magic," but the advertising matter was changed so as to show the tool as the Modern Magic Chuck. There was some purpose, doubtless, of adding the word "Modern," and the only purpose that would seem to be reasonable is that, by so doing, this chuck might become identified with the maker, the Modern Tool Company. There was confessedly no change in the chuck which necessitated adding the word "Modern," and this word could only have referred to the name of the maker. In view of all these circumstances and acts of the plaintiff and its predecessor, we are of the view that the preponderance of the testimony conclusively shows that the word "Magic," as used by the plaintiff and its predecessor, in connection with this chuck, was generic, that it meant to the public a chuck having the peculiar characteristics and features of the tool, and that it had not acquired a secondary meaning indicating the maker or manufacturer of the tool.

■■ But it is further contended that the tool as in fact manufactured by the plaintiff

was not and is not the device covered by the Davis patent. It appears by the record in this case that this identical tool was for seventeen years manufactured and sold under the protection of the Davis patent. In fact, the tool itself falsely bore evidence that it was patented for at least one year subsequent to the expiration of the patent; and continuously up to the time of the commencement of this action the advertisements of the plaintiff and its predecessor indicated that it was protected by patent. The plaintiff, having enjoyed the benefits of the monopoly protected by this patent, cannot consistently now be heard to say that in fact the device manufactured and sold by it was not the device so patented. Sproull v. Pratt & Whitney Co. (C. C.) 97 F. 807. There is an intimation in the record that the defendant's delay in commencing the manufacture of its chuck precluded it from invoking the doctrine announced in Singer Manufacturing Company v. June Manufacturing Company, supra, but it should be observed in this connection that during all this time the plaintiff and its predecessor were, through their advertisements, falsely representing that this device was protected by patent. It is not in the mouth of the plaintiff, therefore, to urge that the defendant should earlier have discovered its deception or fraud. To permit plaintiff so to do would allow it to take advantage of its own wrong.

In view of what we have already said, it becomes unnecessary to decide whether or not the acts of the plaintiff were such as to preclude it from seeking the aid of a court of equity, for the reason that it did not come into that court with clean hands. We therefore express no opinion on that issue.

It follows that the judgment of the lower court should be and is reversed, with directions to dismiss plaintiff's bill of complaint.