## BRISTOL CO. v. GRAHAM.

(Circuit Court of Appeals, Eighth Circuit. August 22, 1912.)

No. 3,752.

1. TRADE-MARKS AND TRADE-NAMES (§ 43*)—MARKS SUBJECTS OF APPROPRIATION—DRAWINGS OF EXPIRED PATENT.

On the expiration of a patent, any one has the right to make the patented article, and to describe it in advertisements not only in the language of the patent, but also by the use of a drawing therein, and the patentee cannot, by registering such drawing as a trade-mark, secure the right to its continued exclusive use, since it becomes free to the public, along with the article which it describes.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 48, 49; Dec. Dig. § 43.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. TRADE-MARKS AND TRADE-NAMES (§ 93*)—UNFAIR COMPETITION.

Evidence considered, and *held* insufficient to sustain a claim of unfair competition by imitation of complainant's labels and boxes containing belt lacings.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 104–106; Dec. Dig. § 93.*

Unfair competition in use of trade-mark or trade-name, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

Suit in equity by the Bristol Company against David F. Graham. Decree for defendant, and complainant appeals. Affirmed.

Roy M. Eilers, of St. Louis, Mo. (Terrence F. Carmody, of Waterbury, Conn., of counsel), for appellant.

W. F. Small, of St. Louis, Mo. (W. Keane Small, of St. Louis, Mo., of counsel), for appellee.

Before SANBORN and HOOK, Circuit Judges, and WILLARD, District Judge.

WILLARD, District Judge. The Bristol Company, plaintiff below, charged in the bill infringement of its trade-mark and unfair competition. On July 30, 1889, William H. Bristol, the assignor of the plaintiff, obtained a patent for a steel belt lacing. The drawings accompanying that patent do not appear in the record, but it is said that the drawing below, marked Figure 3, is a correct representation of Figure 3 of the patent:

Fig. 3.

The lacing standing on the belt is identical with the model of the plaintiff's lacing, Exhibit 4. The patent expired in 1906. About three months before its expiration, and on March 9, 1906, the plaintiff applied for the registration of a trade-mark in connection with its

steel belt lacing, and on March 5, 1907, registration was granted of a trade-mark, of which the following is a copy:

READY TO APPLY        FINISHED JOINT

This is the trade-mark claimed to be infringed.

[1] The patent having expired, the defendant had the right to manufacture Bristol steel belt lacings. This is conceded by the appellant. It says in its brief, on page 9:

"Complainant concedes that the article made under a patent is free to be used by the public after the patent expires, and that the marking, colors, etc., of the article may be imitated, and that the generic and identifying name may likewise be used."

The defendant or any one else having a right to make the lacing, he had a right to describe it as it was described in the specification in the patent. In describing it he was not limited to the words used by the patentee in telling what the patent was. He was entitled to describe it by the drawings. The registered trade-mark is nothing more than a pictorial description of the article made. It is a symbol showing how the lacing is applied. It is a part of the directions which the Bristol Company has always given as to the use of the article. This appears from the plaintiff's label, which, under the head of "Directions," contains the following:

"Place the lacing upon the joint as shown in the above cut, and drive the spurs through."

The plaintiff introduced in evidence a circular issued in connection with the Buffalo belt fasteners. That circular contains several cuts, and says under one of them:

"This cut represents the manner in which the fasteners should be used."

Under another cut it says:

"This cut represents a very excellent feature of the fasteners."

This is precisely what the plaintiff's cut represents, the manner in which the lacing should be used. Its trade-mark does not indicate origin or ownership. Any one making Bristol steel belt lacing could employ this design with equal truth and with equal right. In the case of Standard Paint Co. v. Trinidad Asphalt Co., 220 U. S. 446, on page 453, 31 Sup. Ct. 456, on page 457 (55 L. Ed. 536), the court said:

"The definition of a trade-mark has been given by this court and the extent of its use described. It was said by the Chief Justice, speaking for the court, that 'the term has been in use from a very early date, and, generally speaking, means a distinctive mark of authenticity, through which the products of particular manufacturers or the vendable commodities of particular

merchants may be distinguished from those of others. It may consist in any symbol or in any form of words; but, as its office is to point out distinctively the origin or ownership of the articles to which it is affixed, it follows that no sign or form of words can be appropriated as a valid trademark, which, from the nature of the fact conveyed by its primary meaning, others may employ with equal truth, and with equal right, for the same purpose.' Elgin National Watch Company v. Illinois Watch Co., 179 U. S. 665, 673, 21 Sup. Ct. 270, 45 L. Ed. 365. There is no doubt, therefore, of the rule. There is something more of precision given to it in Canal Company v. Clark, 13 Wall. 311, 323, 20 L. Ed. 581. where it is said that the essence of the wrong for the violation of a trade-mark 'consists in the sale of the goods of one manufacturer or vendor as those of another, and that it is only when this false representation is directly or indirectly made that the party who appeals to a court of equity can have relief.' A trade-mark, it was hence concluded, 'must therefore be distinctive in its original signification pointing to the origin of the article, or it must have become such by association.' But two qualifying rules were expressed, as follows : 'No one can claim protection for the exclusive use of a trade-mark or trade-name which would practically give him a monopoly in the sale of any goods other than those produced or made by himself. If he could, the public would be injured, rather than protected, for competition would be destroyed. Nor can a generic name, or a name merely descriptive of an article of trade, of its qualities, ingredients or characteristics, be employed as a trade-mark and the exclusive use of it be entitled to legal protection.' And, citing Amoskeag Manufacturing Company v. Spear, 2 Sandf. (N. Y.) 599, it was further said there can be 'no right to the exclusive use of any words, letters, figures, or symbols which have no relation to the origin or ownership of the goods, but are only meant to indicate their names or qualities."

When that case was before this court ('Trinidad Asphalt Mfg. Co. v. Standard Paint Co., 163 Fed. 977, on page 979, 90 C. C. A. 195, on page 197), it was said :

"It is the settled rule that no one can appropriate as a trade-mark a generic name, or one descriptive of an article of trade, its qualities, ingredients, or characteristics, or any sign, word, or symbol which, from the nature of the fact it is used to signify, others may employ with equal truth."

In Merriam v. Famous Shoe & Clothing Co. (C. C.) 47 Fed. 411, Judge Thayer said, on page 413 :

"The next matter to be considered is the charge that the defendant uses the device of a book, with the words 'Webster's Dictionary' printed thereon, on its circulars, bill heads, etc. in imitation of a like practice pursued by the complainants. In my judgment, no person engaged in publishing and selling a book or books can acquire an exclusive right to use the device of a book on letter heads and bill heads, or on wrappers or boxes containing books. The device in question, when used in that connection or relation, is not sufficiently arbitrary to constitute a valid trade-mark. When so used by a publisher or bookseller, such a device serves to indicate the kind of business in which a party is engaged, or it is descriptive of the contents of particular packages. Other persons engaged in the same business have the right to advertise their calling, or to describe the contents of packages, by the use of the same device. If a publisher or bookseller can acquire an exclusive right to use the device of a book on letter heads, bill heads, wrappers, etc., then a watchmaker might acquire the exclusive right to use the picture of a watch, a shoemaker to use the picture of a shoe, and so on throughout the entire list of occupations in which men are engaged."

In Rice-Stix Dry Goods Co. v. J. A. Scriven Company, 165 Fed. 639, on page 642, 91 C. C. A. 475, on page 478, this court said :

"The buff-colored strip, in combination with the light-colored body, became clearly descriptive of the article, and because complainant alone, during the

life of the patent, manufactured the same, the color alone did not indicate to the public that such drawers were of complainant's make."

In Greene, Tweed & Co. v. Manufacturers' Belt Hook Co. (C. C.) 158 Fed. 640, it was said, on page 641:

"From the affidavit of complainant's witness E. W. Blake, it appears the studs made under Blake patents generally had the stars stamped upon them. Whatever of significance there may have been in this device is now, and was at the time this suit was begun, public property as an appurtenance to the Blake and Weston patents. If the stud was always so marked by the manufacturers while they had a monopoly thereof, it may well be claimed now that the distinctive earmarks which entered into its trade success also became public."

See, also, Yale & Towne Mfg. Co. v. Worcester Mfg. Co. (C. C. A.) 195 Fed. 528 (1st Circuit).

This is not the first time that an attempt has been made to extend the monopoly of a patent by registering a trade-mark connected therewith after the patent had expired. Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118; J. A. Scriven Co. v. W. H. Towles Mfg. Co., 32 App. D. C. 321. In Sternberg Mfg. Co. v. Miller, Du Brul & Peters Mfg. Co., 161 Fed. 318, at page 320, 88 C. C. A. 398, at page 400, this court said:

"When this patent expired in 1903, the complainant clearly enough, as we think, sought to perpetuate its monopoly by registering the name 'Vertical Top' as a trade-mark."

In Cheavin v. Walker, Law Rep. 5 Chanc. Div. 850, the court said, at page 862:

"Protection extends only to the time allowed by the statute for the patent, and if the court were afterwards to protect the use of the word as a trade-mark, it would be in fact extending the time for protection given by the statute. It is, therefore, impossible to allow a man who has once had the protection of a patent to obtain a further protection by using the name of his patent as a trade-mark."

And again at page 863:

"It is impossible to allow a man to prolong his monopoly by trying to turn a description of the article into a trade-mark. Whatever is mere description is open to all the world. In the present case the plaintiff's label was nothing more than a description, and he cannot therefore have protection for it as a trade-mark."

Our conclusion is that the trade-mark is not a valid one.

[2] The plaintiff says, however, that although defendant may have the right to manufacture Bristol steel lacing, to sell it under that name, and to use the design in question, he has no right to sell other lacings under the name of the Bristol lacing. This claim removes the discussion into the second part of the case, namely, that relating to unfair competition.

A sample of the paper box in which the defendant packs his hooks appears in the record, but it seems very strange that the plaintiff did not introduce a sample of its box. There is no way, therefore, of comparing the two boxes for the purpose of seeing whether the defendant has so dressed his goods as to attempt to palm them off as the goods of the plaintiff. The plaintiff's label, however, appears in

the record, and the testimony of Bristol is that the label was placed on the top of each box. That label, printed with black ink upon red paper, is as follows:

The defendant has no label, strictly speaking, but prints his design and reading matter upon the box itself. This box seems to be made of light manila cardboard. The design upon the top is as follows:

An examination of the tops of the respective boxes shows that there is no similarity whatever between them. There is hardly anything on one that appears on the other. It is true, however, that upon two sides of the box the defendant prints the words "Steel belt lacing," and upon another side he prints a cut very like that shown in the plaintiff's trade-mark. It differs from it, though in two respects: (1) It does not have the words, "Ready to Apply, Finished Joint," thereon; and (2) it represents, not the Bristol lacing, but the defendant's hooks, which are different from the lacing.

It is also true that on some of the stationery of the defendant his

cut appears as it does upon the box, but with the words "Ready to Apply, Finished Joint," thereon. There is no evidence in the case, however, that any one ever bought the defendant's hooks, thinking that he was buying Bristol steel belt lacing. One of the plaintiff's witnesses, a traveling salesman, testified that the representations made by the defendant were that the Star was just as good as the Bristol. He also said that he was unable to sell any of the Bristol product to one firm in Denver, because they had the Star, and said they were just as good for less money. The evidence is entirely insufficient to justify a holding that the defendant has been guilty of unfair competition.

The decree of the court below is affirmed, with costs.