## ZITTLOSEN MFG. CO. v. BOSS.

(Circuit Court of Appeals, Eighth Circuit. October 12, 1914.)

No. 4191.

1. PATENTS ⚙☞177—CONSTRUCTION—GENERAL AND SPECIFIC CLAIMS.

When a patent contains a general claim for a combination of certain mechanical elements and a specific claim for a combination of a specified form, composition, or construction of one of those elements with the other elements of the general claim, the legal presumption is that the two claims secure different combinations, and the general claim is not limited to the specified form, composition, or construction claimed in the specific claim, but protects the element and its mechanical equivalents, though in form, composition, or construction differing from that of the specific claim.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 253, 254; Dec. Dig. ⚙☞177.]

2. PATENTS ⚙☞235—INFRINGEMENT—CHANGE OF FORM OR COMPOSITION.

Mere changes of the form or composition of a device, or of some of the mechanical elements of a combination, will not avoid infringement, where the principle or mode of operation of the patented improvement or combination is adopted, unless the form or composition is the distinguishing characteristic of the invention.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 371; Dec. Dig. ⚙☞235.]

3. PATENTS ⚙☞328—ANTICIPATION—GRASS COLLECTOR FOR LAWN MOWERS.

The Boss patent, No. 1,039,355, for a grass collector for lawn mowers, is void for anticipation by patent No. 701,255, claim 2, to the same patentee.

4. TRADE-MARKS AND TRADE-NAMES ⚙☞71—UNFAIR COMPETITION—RIGHT TO PROTECTION.

While a geographical or descriptive name may not be exclusively appropriated as a trade-mark, yet a manufacturer, having adopted such a name as a designation for his goods, is entitled to be protected therein as against unfair competition.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 82; Dec. Dig. ⚙☞71.]

5. TRADE-MARKS AND TRADE-NAMES ⚙☞71—UNFAIR COMPETITION.

Where complainant had extensively advertised and built up an extensive trade in its grass catchers for lawn mowers under the name of "Easy Emptying," the use of such designation by defendant in its catalogues and circulars for a different device, whereby purchasers were misled, held unfair competition, which entitled complainant to an injunction.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 82; Dec. Dig. ⚙☞71.

Unfair competition in use of trade-mark or trade-name, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

Appeal from the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Suit in equity by William Boss, doing business as the Specialty Manufacturing Company, against the Zittlosen Manufacturing Company. Decree for complainant, and defendant appeals. Modified.

Howard G. Cook, of St. Louis, Mo. (James E. Garstang, of St. Louis, Mo., on the brief), for appellant.

Frank A. Whiteley, of Minneapolis, Minn., for appellee.

⚙☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before SANBORN and SMITH, Circuit Judges, and TRIEBER, District Judge.

TRIEBER, District Judge. The appellee, plaintiff below, instituted this action to enjoin the appellant, defendant in the court below, from infringing his letters patent No. 701,255, issued May 27, 1902, No. 829,943, issued September 4, 1906, and No. 1,039,355, issued September 24, 1912, for improvements in grass catchers for lawn mowers, and also unfair competition of the trade-name "Easy Emptying."

The defendant, in its answer, denied that the plaintiff was the first original and sole inventor of the devices set forth in the letters patent, and that they had not been in public use in the United States for more than two years prior to the plaintiff's application for said letters patent. It then sets up a large number of patents previously granted, which it is claimed anticipated plaintiff's devices. It also pleads that said devices were not patentable, and the letters patent therefor are therefore void. It denies that the grass-catching devices made and sold by it were like or similar in kind to those set forth in plaintiff's letters patent, and therefore denies that it has infringed them. It denies that plaintiff ever adopted the use of the words "Easy Emptying" as a trademark for grass-catching devices for lawn mowers, or ever acquired any trade-mark valid in law in and to said words. It admits that it used the descriptive words "Easy Emptying" in its catalogues, circulars, and leaflets in connection with grass-catching devices, but only in connection with its corporate name and place of business clearly printed thereon, not only on the cover page, but on each and every page of said catalogues, circulars, pamphlets, and leaflets. It denies that it ever used the words "Easy Emptying" on grass-catching devices of its manufacture, and only used them in a descriptive sense; denies that their use under the circumstances stated has confused the purchasing public in the exercise of ordinary care, or persons who bought its devices, with those of plaintiff's manufacture, or that the public has in any wise been deceived or defrauded into purchasing its devices as and for those of plaintiff's manufacture. It also claims that the words "Easy Emptying" are not susceptible of exclusive appropriation as a trade-mark for grass-collecting devices, as they are wholly descriptive.

After a hearing the District Court adjudged all of the patents valid (of patent No. 1,039,355, claims 1, 2, and 4), and also found that the defendant had been guilty of unfair competition in its use of the descriptive words "Easy Emptying" in connection with the grass catchers for lawn mowers sold by it. An injunction was granted and a reference made for an accounting of the defendant's profits. The appeal is only to so much of the decree as relates to the findings of infringement of letters patent No. 1,039,355, and unfair competition in the use of the words "Easy Emptying." The validity of the other letters patent is conceded.

The devices of patent No. 1,039,355 are a grass-catching receptacle, removable or detachable from the lawn mower, having an upper and forward wire frame or structure with a metal bottom, and a handle secured to the upper wire frame in such a manner that it is connected at the sides and rear of such frame in substantially the same plane

therewith, which facilitates the nesting of several catchers, which, being supplied with canvas walls, are collapsible. A swinging wire hook is fastened to the center rear portion of the upper wire frame between the space portion of the handle at its rear connection with said frame, which hook is adapted to be hooked over the handle of the mower to support the rear end of the catcher when it is carried by the mower. When the catcher is filled with grass clippings, the operator releases the swinging wire hook from the mower handle, grasps the catcher handle with his hand, detaches the forward hooks from the brackets on the mower frame, carries the catcher by its handle to some selected place of discharge, and there empties the contents by dumping the same by means of the handle, after which he returns the catcher to the mower by engaging the forward hooks with the brackets on the mower frame and re-engaging the rear swinging wire hook over the mower handle.

The claims of plaintiff in his application, upon which the patent was finally granted, were as follows:

"1. The combination, with the lawn mower and its handle bar, of a grass receptacle removably supported at its front end upon a lawn mower, a handle for the receptacle consisting of wire portions formed with terminal hooks at its extreme ends having engagement respectively with the sides and rear of the receptacle and intermediately brought together to form a hand grip and a hook having swing support on the rear of the receptacle alongside the rear hook of the handle portion and detachably engaging the mower handle.

"2. In combination with the lawn mower and handle, a grass-catching receptacle having means at its front ends for detachably engaging with said lawn mower frame, a handle 13 extending from the rear of said lawn mower receptacle to the opposite sides thereof and having separated portions at its point of attachment to the rear side of said receptacle, and an arm having swing support upon said receptacle between said separated portions, for the purpose set forth."

Claim No. 3 is not inserted, as the court granted the injunction only for infringement of claims 1, 2, and 4.

"4. The combination, with a lawn mower and its handle bar, of a grass receptacle detachably supported at its front end upon the lawn mower, a handle for the receptacle consisting of wire portions centrally twisted together, the forward portions diverging forwardly and being formed with terminal hooks engaging the sides of the receptacle, and the rear portions being spaced apart and secured over the top member of the receptacle frame at the rear, and an arm having swing support upon the top member of the receptacle between the spaced wire portions and detachably engaging the handle bar of the mower."

The finding of infringement of the patent is not questioned by the defendant, its validity only being attacked. There are many patents which it is claimed anticipate this patent, but in view of the conclusions reached by the court it is only necessary to refer to plaintiff's earlier patent No. 701,255, issued May 27, 1902, on an application filed August 28, 1890. That was a pioneer patent for the combination with a lawn mower frame of a grass-catching receptacle supported by a wire frame detachably connected at its forward end to brackets on the frame of the lawn mower and a handle connected to the rear of the frame of the receptacle and to the sides of the frame thereof and detachably to the handle of the lawn mower frame. The claims of plaintiff's patent No. 1,039,355 are not for an improvement of the grass catcher, but for a new form of handle for the receptacle. Mr. Boss, the patentee, in his testimony said:

"In the spring of 1906 I found in a store in St. Paul a grass catcher offered for sale, having a long wooden handle like the one used on my first grass catchers. I immediately set about to improve this handle; conceived the idea of making a handle such as is shown in our No. 10 G schedule. This handle is composed of one piece of heavy wire bent double at its center, then bent again near the center, so as to hook over a top wire of the frame at the rear of the grass catcher. The wires were then brought forward—were formed and twisted so as to form a hand grip to be used in lifting and carrying the catcher. The wires were then bent outward, one to each side of the grass catcher; hooks were formed at the ends of the wire, which were closed down securely over the top wire of the frame at the side of the grass catcher. This made a very rigid handle, which balanced the carrier perfectly."

And on cross-examination, when asked the following question:

"As a matter of fact, after seeing the Hann Manufacturing Company long handle catcher in 1906, did it not instantly occur to you that you would carry those side wires back and hook them around the rear of the frame and get the same handle feature in a more compact form than in your long handle catcher?"

—his answer was:

"Not immediately after I saw that handle. When I saw the handle, the question that came into my mind was what to do with the infringement, and how I could better the construction of my catcher. The result was the making of the short wire handle in the fall or winter of the year 1906, offering it to the trade the coming spring."

Under the plaintiff's patent, No. 701,255, the handle was straight, without any hook to fasten it to the lawn mower bar but was detachable, as is the device of the last patent. The illustrations of the two patents show the changes:

PATENT NO. 1,039,355          PATENT NO. 701,255

Therefore the claim for the last patent is the improvement of the handle, substituting the wire handle for the long handle and the wire hook.

Counsel for the appellant contends: (1) That the device disclosed by patent No. 1,039,355 is anticipated by patent No. 701,255; and (2) that the improvement claimed by the former patent was the product of mechanical skill and not of inventive genius. The first propostion cannot be sustained without reversing the third paragraph of the decree below, which reads:

"That said claims 2 and 3 of said patent No. 701,255 are specifically limited to a construction of grass-catching receptacle provided with a long wooden handle as illustrated in the drawings of said patent and described in the specification thereof"

—for the handle claimed in patent No. 1,039,355 has no long wooden handle.

The first question counsel for the appellant compels us to answer is whether or not the third paragraph of the decree is just and valid. Copies of the drawings of patent No. 701,255 appear above. They do not limit the claims of the patent to a long or to a wooden handle. There is no statement in the specification that the handle is necessarily either wooden or long. On the other hand, the specification declares that:

"The receptacle *C* is provided with a suitable handle *D*, connected with the sides of the top of the frame wires *6* by diverging wires *11*, and is connected with the rear of the frame *6* by a rivet or other equivalent device *14*. As shown in Fig. 1, the handle *B* is removably connected with the handle of the mower by means of a hook *12*, carried by the handle of the mower and adapted to receive the handle of the grass receptacle."

And the inventor writes therein thus:

"I am aware that it is not new to provide lawn mowers with grass-collecting receptacles; but in my construction the receptacle is provided with a handle and removably supported from the handle of the mower."

The patent contains three claims, and the court below adjudged the second and third valid and infringed. They are:

"2. In combination with a lawn mower frame and handle, and brackets carried by the former, a grass-catching receptacle comprising a frame of wire whose front ends detachably engage said brackets, a handle connected to the rear of said frame, wires diverging from the front end of this handle and connected with the sides of the frame, and a hook on the lawn mower handle detachably engaging the handle of the frame.
"3. In combination with a lawn mower frame and handle, and brackets carried by the frame, a grass-catching receptacle, whose front ends detachably engage with said brackets, a straight handle rigidly secured to the rear of said receptacle, said handle projecting rearwardly parallel with the mower handle when the receptacle is in position, and a hook detachably supporting said receptacle handle underneath said mower handle."

The third claim is specifically limited to a combination of a straight handle projecting rearwardly parallel with the mower handle when the receptacle is in position, and of a hook detachably supporting that handle with the grass receptacle detachably connected with a lawn mower frame and the lawn mower frame itself, and it may be too narrow to anticipate the short handle and swinging hook of patent No.

1,039,355. But the second claim is broad and general. It covers the real invention of Boss, which was the combination of a lawn mower frame with a grass receptacle detachably connected therewith and a handle to the receptacle detachably connected with the handle of the lawn mower.

[1] When a patent contains a general claim for a combination of certain mechanical elements and a specific claim for a combination of a specified form, composition, or construction of one of those elements with the other elements of the general claim, the legal presumption is that the two claims secure different combinations, and the general claim is not limited to the specified form, composition, or construction claimed in the specific claim, but protects the element and its mechanical equivalents, though in form, composition, or construction differing from that of the specific claim. J. L. Owens Co. v. Twin City Separator Co., 168 Fed. 259, 267, 93 C. C. A. 561, 569; Risdon Iron & Locomotive Works v. Trent (C. C.) 92 Fed. 375, 378; Los Angeles Art Organ Co. v. Aeolian Co., 143 Fed. 880, 885, 75 C. C. A. 88, 93.

[2] Mere changes of the form or composition of a device or of some of the mechanical elements of a combination will not avoid infringement, where the principle or mode of operation of the patented improvement or combination is adopted, unless the form or composition is the distinguishing characteristic of the invention. Columbus Watch Co. v. Robbins, 64 Fed. 384, 396, 12 C. C. A. 174, 187; New Departure Bell Co. v. Bevin Bros. Mfg. Co. (C. C.) 64 Fed. 859; Machine Co. v. Murphy, 97 U. S. 120, 125, 24 L. Ed. 935; Winans v. Denmead, 15 How. 342, 14 L. Ed. 717; Robinson on Patents, § 141, p. 201; Blandy v. Griffith, 3 Fed. Cas. 678, No. 1,529; Bonnette Arc Lawn Sprinkler Co. v. Koehler, 82 Fed. 431, 27 C. C. A. 200; National Hollow Brake Beam Co. v. Interchangeable Brake Beam Co., 45 C. C. A. 544, 562, 106 Fed. 693, 711.

"If two devices do the same work in substantially the same way, and accomplish * * * the same result, they are the same, even though they differ in name, form, or shape." Machine Co. v. Murphy, 97 U. S. 120, 125 (24 L. Ed. 935).

[3] In the light of these established rules the short handles of the defendant and of the patent No. 1,039,355, with their different forms of hooks for detachably connecting the handles of the grass receptacles with the handles of the lawn mowers, when these handles are combined with lawn mowers and grass receptacles detachably connected to the lawn mowers, do the same work in substantially the same way and accomplish the same result as the combination described in patent No. 701,255. They appropriate the principle and use the mode of operation of the combination of that patent, and are therefore the mechanical equivalents thereof, and the conclusion is that the third paragraph of the decree is erroneous, that the second claim of patent No. 701,255 anticipates and renders void patent No. 1,039,355, and that the defendant's device infringes the anticipating patent.

This conclusion has not been reached without a consideration of the argument of counsel for the appellant that this court cannot lawfully determine the validity of the third paragraph of the decree on

this appeal, because the respondent has not appealed. But the contention of the appellant that patent No. 701,255 anticipates the improvement described in No. 1,039,355 invoked the consideration by this court and gave it jurisdiction of that question. Nor has the court overlooked the patent to Wildermuth, No. 607,899, or the other patents and devices disclosed by the record. But, as the court below correctly held, none of them anticipates the Boss patent No. 701,255 of May 27, 1902, or the combination there patented, because none of them that is prior to the invention of that combination contains or describes all its essential elements.

We turn, therefore, to the second question: Is the change of the handle as shown in the last patent a new invention which is patentable? In Wayne Mfg. v. Benbow-Brammer Mfg. Co., 168 Fed. 271, 277, 93 C. C. A. 573, 579, Judge Sanborn, speaking for this court, said:

"It is a familiar rule that the application of an old machine or device, found in an analogous art, without substantial modification, to a new use, is not invention, or patentable, where its applicability would occur to a person of ordinary mechanical skill."

That the device patented by plaintiff's last letters patent falls within this rule is clearly shown by the illustrations of the two patents. The patentee merely substituted in place of the wooden handle a short wire handle with a hook. The most that can be claimed by plaintiff for his last patent is that it produces better results by reason of the short handle; but the law is well settled that changes in degree, proportion of symmetry in a machine, where it does the same thing in the same way, and by substantially the same means, although it may produce better results, does not amount to a patentable invention. Torrey v. Hancock, 184 Fed. 61, 70, 107 C. C. A. 79.

It is also claimed that, in view of the fact that the lawn mowers under the last patent of plaintiff have gone into extensive use, this is evidence of its utility and the right to be patented. But such evidence would only be considered as evidence of invention in doubtful cases, and is not conclusive, and where there is no invention the extent of the use is immaterial. Boss Mfg. Co. v. Thomas, 182 Fed. 811, 105 C. C. A. 243, and authorities there cited. The fact that the handle in plaintiff's last patent is shorter than the one in the first, and therefore easier handled, and that it is made of wire, instead of other material, cannot be said to make it a patentable invention, as the difference is in minor matters only, such as would suggest themselves to a person possessing ordinary skill in the art. Ansonia Co. v. Electrical Supply Co., 144 U. S. 11, 12 Sup. Ct. 601, 36 L. Ed. 327; Lovell Mfg. Co. v. Cary, 147 U. S. 623, 13 Sup. Ct. 472, 37 L. Ed. 307; Model Bottling Mach. Co. v. Anheuser-Busch Brewing Co., 190 Fed. 573, 111 C. C. A. 389. The changes, in our opinion, involve only mechanical skill, and not invention.

We are of the opinion that the device in this patent is not an invention which, under the law, entitles it to a patent.

[4] As to unfair competition, it is claimed on behalf of the defendant that, as the words "Easy Emptying" aptly describe the particular

characteristic of the plaintiff's device, they are descriptive, and therefore cannot be appropriated as a trade-mark. It is true, as held by this court in Trinidad Asphalt Co. v. Standard Paint Co., 163 Fed. 977, 979, 90 C. C. A. 195, affirmed 220 U. S. 446, 31 Sup. Ct. 456, 55 L. Ed. 536, that no one can appropriate as a trade-mark a geographical or generic name, or one descriptive of an article of trade, its qualities, ingredients, or characteristics, or any sign, word, or, symbol which, from the nature of the fact it is used to signify, others may employ with equal truth. The same rule is recognized in Bristol Co. v. Graham, 199 Fed. 412, 117 C. C. A. 644. But, on the other hand, it is equally well settled that, if one palms· off his manufactures as those of another, he may be enjoined, although he commits the fraud by the use of names which are not subject to trade-mark property. McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828; Chemical Co. v. Meyer, 139 U. S. 540, 11 Sup. Ct. 625, 35 L. Ed. 247; Elgin National Watch Co. v. Illinois Watch Co., 179 U. S. 665, 674, 21 Sup. Ct. 270, 45 L. Ed. 365; French Republic v. Saratoga-Vichy Co., 191 U. S. 427, 435, 24 Sup. Ct. 145, 48 L. Ed. 247; Shaver ·v. Heller & Merz Co., 48 C. C. A. 48, 59, 108 Fed. 821, 823, 832, 65 L. R. A. 878; Buzby v. Davis, 150 Fed. 275, 277, 278, 80 C. C. A. 163, 165, 166, 10 Ann. Cas. 68; Peck Bros. & Co. v. Peck Bros. Co., 113 Fed. 291, 298, 51 C. C. A. 251, 258, 62 L. R. A. 81; Wolf Bros. & Co. v. Hamilton-Brown Shoe Co., 165 Fed. 413, 415, 91 C. C. A. 363, 365; Samson Cordage Works ·v. Puritan Cordage Mills, 211 Fed. 603, 608, 128 C. C. A. 203.

In the Elgin Watch Case it was held that:

"The manufacturer of particular goods is entitled to the reputation they have acquired, and the public is entitled to the means of distinguishing between those and other goods; and protection is accorded against unfair dealing, whether there be a technical trade-mark or not. The essence of the wrong consists in the sale of the goods of one manufacturer or vendor for those of another."

In French Republic v. Saratoga-Vichy Co. it was said:

"True, the name is geographical; but geographical names often acquire a secondary signification, indicative, not only of the place of manufacture or production, but of the name of the manufacturer or producer and the excellence of the thing manufactured or produced, which enables the owner to assert an exclusive right to such name as against every one not doing business within the same geographical limits; and even as against them, if the name be used fraudulently for the purpose of misleading buyers as to the actual origin of the thing produced, or of palming off the productions of one person as those of another."

In Wolf Bros. Co. v. Hamilton-Brown Shoe Co. this court held:

"While it is true that a geographical name may not be exclusively appropriated as a trade-mark, yet a party, having adopted a geographical name as a designation of its goods, may be protected as against unfair trade. * * * In this case, while complainant is not entitled to relief upon the ground that the words 'The American Girl,' or the numeral applied to its several styles of shoes, are valid trade-marks, yet it is entitled to protection from their use by the defendant in a manner and under circumstances constituting unfair trade; the essential of the rule being that one person shall not, in the sale of his goods, so act as to lead the public to believe that they are the goods of another."

In Hole-Proof Hosiery Co. v. Wallach Bros., 172 Fed. 859, 97 C. C. A. 263, the same rule was applied to a descriptive word (hole-proof), not geographical.

[5] The record discloses that plaintiff has extensively advertised its grass catchers for lawn mowers under the name of "Easy Emptying" and has established a large demand for them; that the words have acquired a secondary meaning, indicating to the prospective purchaser that they are grass catchers manufactured by the plaintiff, apparently to their satisfaction; that the defendant, in its catalogues, circulars, and leaflets, called another device of that nature "Easy Emptying," thereby misleading purchasers into the belief that his grass catchers are the same as those made by plaintiff, and the court below so found.

It is also claimed by the defendant that it is not now, and has not for some time, been using this description. If this is true, the prohibition will do it no harm, and will no doubt be considered in the accounting.

The decree of the court below must accordingly be reversed, and the case must be remanded to that court, with instructions to render a decree in favor of the complainant below which shall contain paragraphs 1, 2, 4, 8, 9, 10, and 11, except that the words and figures "and No. 1,039,355" shall be omitted therefrom, and the word "and" shall be inserted before the figures "829,943" therein, and 12, which shall omit all the other paragraphs of the former decree, and shall contain a new paragraph to the effect that the device disclosed by claims 1, 2, and 4 of patent No. 1,039,355 is anticipated, as is that patent, by letters patent No. 701,255, and that the appellant pay four-sevenths and the appellee three-sevenths of the costs in this court.

And it is so ordered.