RUBBER & CELLULOID HARNESS TRIMMING CO. v. F. W. DEVOE & C. T. REYNOLDS CO.

(District Court, D. New Jersey. June 8, 1916.)

1. TRADE-MARKS AND TRADE-NAMES ☞3(4)—UNFAIR COMPETITION—WHAT CONSTITUTES TRADE-MARK.

Where manufacturers of brushes had previously used the terms "glue set" or "cement set" to indicate the substance in which the bristles were set, a manufacturer, the bristles of whose brushes were set in rubber, cannot, by adopting the phrase "rubberset," acquire a trade-mark in that expression, for it is descriptive only.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 7; Dec. Dig. ☞3(4).]

2. TRADE-MARKS AND TRADE-NAMES ☞71—UNFAIR COMPETITION.

Where an expression used by a manufacturer in connection with his goods, although descriptive only, acquires a secondary signification, indicating that particular manufacturer's goods, other manufacturers will be restrained from using such terms in such a manner as to palm off their goods as those of the original appropriator, though he had no trade-mark therein.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 82; Dec. Dig. ☞71.]

3. TRADE-MARKS AND TRADE-NAMES ☞93(3)—UNFAIR COMPETITION—EVIDENCE—BURDEN OF PROOF.

In such cases it is not necessary that actual intent to defraud be shown; but, if the expression which has acquired the secondary meaning, indicating a particular manufacturer's goods, or one similar thereto, is used by another in such a way as would be likely to deceive the public in believing that the former's goods are those of the latter, it will be conclusively presumed that it was intended to defraud.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 106; Dec. Dig. ☞93(3).]

4. TRADE-MARKS AND TRADE-NAMES ☞71—UNFAIR COMPETITION—WHAT CONSTITUTES.

Complainant acquired the patent for making brushes in which the bristles were set in rubber. After the time of the expiration of the

patent, complainant adopted the name "rubberset" for its brushes and extensively advertised them. Some time after expiration of the patent, defendants began to manufacture similar brushes, and sold them under the name "set in rubber—Devoe." The name "Devoe" was part of the name of the defendant corporation. The name given by defendant to its brushes was placed on the ferrule of the brushes, the same place that complainant used for the word "rubberset." Defendant's catalogue advertised that its brushes were set in rubber and its advertising placards bore the legend "set in rubber," and below "Devoe." *Held* that, though complainant did not have a trade-mark in the name "rubberset," yet, as its brushes had become known to the public as "rubberset," defendant should not be allowed to use similar expressions in such a way as would tend to mislead the public, and to place the words "set in rubber" on the ferrule of its brushes, though it might use that expression on the handles, accompanied by its corporate name, showing that the brushes were not made by complainant, while similar restrictions must be imposed on its advertising placards, though not on statements made in the catalogue issued under its own name.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 82; Dec. Dig. ⊗⇒71.]

5. TRADE-MARKS AND TRADE-NAMES ⊗⇒98—UNFAIR COMPETITION—DAMAGES.
    Where defendant's unfair competition did not appear willful and fraudulent, complainant, though entitled to an injunction, with damages and compensation, is not entitled to any accounting for profits obtained by defendant through its unfair methods.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 112; Dec. Dig. ⊗⇒98.]

In Equity. Suit by the Rubber & Celluloid Harness Trimming Company against the F. W. Devoe & C. T. Reynolds Company. Decree for complainant.

Pitney, Hardin & Skinner, of Newark, N. J., and Charles C. Gill, of New York City, for plaintiff.

Chauncey G. Parker, of Newark, N. J., for defendant.

HAIGHT, District Judge. This suit was originally brought in the Court of Chancery of New Jersey, and was removed to this court because of the diversity of the citizenship of the parties. It is based on alleged unfair competition. Both parties are, and have been for many years, engaged in the manufacture and sale of brushes; the plaintiff in brushes generally, and the defendant in paint brushes. The unfair competition is claimed to exist in the way in which the defendant designates, marks, and advertises certain kinds of its brushes. Prior to 1887 brushes had been made by setting or holding the bristles in cement, glue, pitch, or rosin, and binding them to the handle by means of a metal ferrule. In that year there was issued to the plaintiff, as assignor of one James A. Read, a patent for a new process of making brushes, that of holding or setting the bristles in rubber and binding the same to the handle by a belt of rubber, or rubber and metal combined; and in 1889 another patent was issued to it for the product of the process of the previous patent. Thereafter the plaintiff began the manufacture of brushes according to the patented process, and has ever since continued to do so. For a number of years it designated and advertised the brushes so made as "Hard Rubber Set and Bound"

and "Hard Rubber Set"; and in 1906 it procured the registration of each of those phrases as trade-marks, alleging that the former had been continuously used by it since March 1, 1890, and the latter since January 1, 1895. It had long been the custom in the trade to describe brushes according to the manner in which their bristles were set, as "cement set," "glue set," "set in cement," etc., for the purpose of distinguishing them and the uses to which they could be put. Some could be used in solvents; others could not.

Prior to 1905 the plaintiff had done very little, if any, advertising of its products, except in the ordinary way, through the medium of trade journals. In the spring of that year, and some time after the patents had expired (they having expired before the usual 17 years limitation, because patents for the same product and process had been granted to Read in Great Britain and France in 1885; see section 4887 of Revised Statutes, before amendment of March 3, 1897 [29 Stat. L. 693, c. 391, § 3]) the plaintiff inaugurated an extensive advertising campaign, and then adopted and caused to be registered as a trade-mark in the Patent Office the word "Rubberset." This word had been suggested by one of its employés, as the result of the offering of a prize for the best name to be applied to its brushes. Thereafter a very extensive advertising campaign was engaged in, and has since been continued. Many thousands of dollars have been expended therein. The advertising was carried on, not only in the trade journals (which had theretofore been the customary method), but in magazines, newspapers, periodicals, display matter, etc.; the idea being to reach the general public as well as the dealers. For several years after the plaintiff began to advertise thus extensively it had no competitors, as it had none before, in the field of making brushes according to the rubber setting process. Shortly thereafter, however, other brush manufacturers began to make such brushes and to put them upon the market. One of the first to do so was the "Rubber-Bound Brush Company," which at first designated its brushes as "Rubber-Bound," and later, after objection to the former name was made by plaintiff, as "Rubber-Vulc." The use of this designation, as well as its corporate name, was, in 1912, enjoined by a decree of the Court of Chancery of New Jersey, which decree was subsequently affirmed by the Court of Errors and Appeals of New Jersey. Rubber & Celluloid Harness Trimming Company v. Rubber-Bound Brush Company, 81 N. J. Eq. 419, 88 Atl. 210, Ann. Cas. 1915B, 365, affirmed 81 N. J. Eq. 519, 88 Atl. 210, Ann. Cas. 1915B, 365. At the time the plaintiff adopted the word "Rubberset" as its trade-mark, it designated its brush department as the "Rubberset Brush Company," and so notified the trade. This was later changed to the "Rubberset Company." It has used this name on its brushes and in all of its advertisements, catalogues, display matter, bill and letter heads, etc., since that time. Within a short time after the plaintiff adopted the word "Rubberset" it commenced to use, on the majority of its brushes, metal ferrules, on which it caused to be embossed, in large type, the word "Rubberset," and nothing more. On the wooden handle it printed the "Rubberset Company," and an arbitrary name (which was according to the trade custom), which designated the brand

of brush, but not its character, the word "Rubberset" denoting the latter.

There is some dispute in the evidence as to whether other manufacturers had not preceded the plaintiff in so stamping or embossing the character of the brush on the metal ferrule. But I consider it established by the evidence that the plaintiff was the first to do so, except that in a few isolated instances, which by no means established a trade custom, the words "set in glue" and a trade-mark had been theretofore imprinted, as distinguished from embossed, in small type on the ferrules of brushes made according to that process. In 1911 the defendant for the first time began to make and sell brushes, the bristles of which were set or held in rubber, and it proceeded to advertise the fact that it was doing so, in its catalogues and otherwise; not, however, by any means as extensively or in the same way as the plaintiff did, but it featured this particular line of goods. It also embossed on the ferrule the character of the brush, as it had not theretofore done with any other of its products, using the words "Set in Rubber—Devoe." On some brushes the words "Set in Rubber" were in one line and the word "Devoe" underneath, the letters of each word being the same size; and in other brushes the words "Set in" were on one line, "Rubber" on another, and "Devoe" on a third. In each the words "Rubber" and "Set" were prominently featured. It also stamped on the wooden handle "F. W. Devoe & Company" and the arbitrary name which designated the brand of the brush. It is the use by the defendant of the words "Set in Rubber" in its catalogues, on the brushes, and in its advertising and display matter, that the plaintiff claims constitutes the unfair competition, which is the subject-matter of this suit.

The defendant contends that the word "Rubberset" is not a valid trade-mark, because it is merely descriptive of the process of manufacture, of the characteristics, qualities, or ingredients of the brush, and consequently that there can be no infringement of it, and that it has been guilty of no unfair competition, because it has not only not used the word "Rubberset," but has accompanied the words "Set in Rubber," whenever used, with its own name, which it claims clearly indicates that the brushes are not manufactured by the plaintiff, and thus has done all that the rules of law require that it should do. It is not claimed by plaintiff, either in its pleadings or in the arguments of counsel, that there is a technical infringement of a valid trade-mark; but it is insisted that under the facts in this case either the use of the words "Set in Rubber," alone, or the way in which the defendant uses them, constitutes unfair competition, as the latter phrase is now understood in the law.

[1] I think it entirely clear that "Rubberset" is not a valid trade-mark as applied to brushes made according to the Read process, because it does not in itself indicate the origin of manufacture, but is merely descriptive of the process of manufacture—the essential characteristic of the brush—the same as "glue set," "cement set," etc. These latter terms, the evidence shows, had been used by manufacturers to describe the manner in which their brushes were made, long before the plaintiff began to use "Rubberset." The general proposi-

tion upon which the above conclusion rests is, of course, so well settled as to need no citation of authorities; but the correctness of its application to the present case is demonstrated, I think, by the following cases, which are only a very few of those which might be cited: Standard Paint Co. v. Trinidad Asphalt Mfg. Co., 220 U. S. 446, 31 Sup. Ct. 456, 55 L. Ed. 536; cases collected in the opinion of the Circuit Court of Appeals of the Eighth Circuit in the same case, Trinidad Asphalt Mfg. Co. v. Standard Paint Co., 163 Fed. 977, 979, 90 C. C. A. 195; Rice-Stix Dry Goods Co. v. J. A. Scriven Co., 165 Fed. 639, 91 C. C. A. 475 (C. C. A. 8th Cir.); Florence Mfg. Co. v. Dowd, 178 Fed. 73, 101 C. C. A. 565 (C. C. A. 2d Cir.); N. Y. & N. J. Lubricant Co. v. Young, 84 N. J. Eq. 469, 94 Atl. 570; Mississippi Wire Glass Co. v. Continuous Glass Press Co., 79 N. J. Eq. 277, 81 Atl. 374. The decisions of the New Jersey courts in the Rubber-Bound Brush Co. Case, supra, were based on unfair competition, and it seems to have been assumed that the plaintiff's trade-marks were invalid as such.

[2] But, as plaintiff contends, it is also well settled that words which are not in themselves a valid trade-mark may, by association with the goods of a particular manufacturer, acquire a secondary signification differing from their primary meaning and denoting the product of that manufacturer, and when this is made to appear their use in that sense will be protected by restraining the use of the words by others in such a way as to amount to a fraud or deception on the public and to cause injury to those to whose employment of them a special meaning has become attached, upon the principle, which underlies the law pertaining to trade-marks, that the manufacturer of the particular goods is entitled to the reputation or good will which they have acquired, and the public is entitled to the means of distinguishing between them and other goods, or, in other words, to state it concisely, that no one may pass off his goods as and for the goods of another. Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 537, 11 Sup. Ct. 396, 34 L. Ed. 997; Coats v. Merrick Thread Co., 149 U. S. 562, 13 Sup. Ct. 966, 37 L. Ed. 847; Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118; Elgin Nat. Watch Co. v. Illinois Watch Co., 179 U. S. 665, 21 Sup. Ct. 270, 45 L. Ed. 365; French Republic v. Saratoga Vichy Co., 191 U. S. 427, 24 Sup. Ct. 145, 48 L. Ed. 247; Herring, etc., Safe Co. v. Hall's Safe Co., 208 U. S. 554, 559, 28 Sup. Ct. 350, 52 L. Ed. 616; Standard Paint Co. v. Trinidad Asphalt Co., 220 U. S. 446, 31 Sup. Ct. 456, 55 L. Ed. 536; Davids Co. v. Davids, 233 U. S. 461, 471, 34 Sup. Ct. 648, 58 L. Ed. 1046; Trinidad Asphalt Co. v. Standard Paint Co., 163 Fed. 977, 90 C. C. A. 195 (C. C. A. 8th Cir.); Standard Paint Co. v. Rubberoid Roofing Co., 224 Fed. 695, 140 C. C. A. 235 (C. C. A. 7th Cir.); Samson Cordage Works v. Puritan Cordage Mills, 211 Fed. 603, 128 C. C. A. 203, L. R. A. 1915F, 1107 (C. C. A. 6th Cir.); Vacuum Oil Co. v. Climax Refining Co., 120 Fed. 254, 256, 56 C. C. A. 90 (C. C. A. 6th Cir.); Fuller v. Huff, 104 Fed. 141, 43 C. C. A. 453, 51 L. R. A. 332 (C. C. A. 2d Cir.); Scriven v. North, 134 Fed. 366, 67 C. C. A. 348 (C. C. A. 4th Cir.); Zittlosen Mfg. Co. v. Boss, 219 Fed. 887, 894, 135 C.

C. A. 551 (C. C. A. 8th Cir.); United Lace & Braid Mfg. Co. v. Barthels Mfg. Co., 221 Fed. 456 (D. C. E. D. N. Y.); International Silver Co. v. Rogers Corp'n, 66 N. J. Eq. 119, 57 Atl. 1037, 2 Ann. Cas. 407, affirmed 67 N. J. Eq. 646, 60 Atl. 187, 110 Am. St. Rep. 506, 3 Ann. Cas. 804; Rubber & Celluloid Harness Trimming Co. v. Rubber-Bound Brush Co., 81 N. J. Eq. 419, 88 Atl. 210, Ann. Cas. 1915B, 365, affirmed 81 N. J. Eq. 519, 88 Atl. 210, Ann. Cas. 1915B, 365; Thompson v. Montgomery, 41 Ch. D. 35; Wotherspoon v. Currie, L. R. 5 H. L. 508; Reddaway v. Banham, [1896] A. C. 199, 25 Eng. Rul. Cas. 193.

Nor can I perceive that the rule laid down by the English cases above cited is in any way weakened by the decision of the House of Lords in Cellular Clothing Co. v. Maxton & Murray, [1899] A. C. 326, as defendant seems to contend. No distinction is made in the cases respecting the general applicability of the foregoing principle, and there can be none in reason as is well pointed out in Trinidad Asphalt Co. v. Standard Paint Co., 163 Fed. 982, 90 C. C. A. 195, to words which are unavailable as technical trade-marks because they are geographical, descriptive, generic, or names of individuals; but its specific application in any particular case may vary according to the nature of the word, both because one kind of a word—for instance, a generic one—may more readily acquire a secondary meaning than a descriptive one, as may also its use be more likely to deceive. The difficulty in any given case arises in determining whether a word or words have acquired a secondary meaning, and, if so, what must be shown to entitle one to relief, and the nature of the relief to be given.

[3] The first question to be decided is, therefore, whether the word "Rubberset" has acquired a secondary signification or meaning of origin of manufacture; in other words, whether it has come to mean to the public brushes manufactured by the plaintiff. This is a question of fact. It was found by Vice Chancellor Howell in the Rubber-Bound Brush Co. Case, and his finding was unanimously concurred in by the Court of Errors and Appeals of New Jersey, that it had acquired such a meaning; and while I have not had the benefit of an examination of the evidence which was before him, I think I am safe in assuming that it was of no more probative force than that which was offered in this case. Without attempting to review the evidence (which I think would serve no useful purpose) I unhesitatingly concur in his finding, and conclude, on the facts in this case, that it has acquired such a secondary meaning, not only among manufacturers, but among dealers and the general public. The evidence furnishes many instances to support this conclusion, which, of necessity, are isolated, but nevertheless, I think, representative. In fact, knowing as we do the effect of modern advertising, it would be difficult indeed, when the character and extent of the advertising which the plaintiff has carried on is considered, to escape the conclusion that the word "Rubberset," as applied to brushes, has come to mean brushes manufactured by the plaintiff. I think it proper to state that in reaching this conclusion, as well as any other respecting the facts, I have not been in any way influenced by and have not considered the letters which

were offered by the plaintiff, through the witness McGinn, as I think them incompetent.

The defendant, however, does not use the word "Rubberset," but the words "Set in Rubber." This word and phrase, however, are so similar that I have no difficulty in finding that, if the latter were used alone, it would convey to the ordinary person the same meaning as the former, and thus would lead to deception. The evidence demonstrates this, I think, beyond question. Indeed, the words "Set in Rubber" are more nearly like "Rubberset" than the hyphenated word "Rubber-Vulc," the use of which was enjoined by Vice Chancellor Howell. If, therefore, the word "Rubberset" were a valid trade-mark, the plaintiff would be entitled to have the further use by the defendant of the words "Set in Rubber" restrained, without proof of deception or intent to deceive, because in such circumstances wrongful intent, as well as deception, is presumed. Elgin Nat. Watch Co. v. Illinois Watch Co., supra. But in a case like this something more than the mere similarity, or what would, if there were a valid trade-mark, amount to infringement thereof, must be shown. Standard Paint Co. v. Trinidad Asphalt Co., 220 U. S. 461, 31 Sup. Ct. 456, 55 L. Ed. 536; Elgin Nat. Watch Co. Case, supra. The rule in New Jersey and that prevailing in England is thus stated by Vice Chancellor Howell in the Rubber-Bound Brush Company Case, 81 N. J. Eq. 424, 88 Atl. 212, Ann. Cas. 1915B, 365:

"It is not necessary that the complainant, in order to succeed, should prove misrepresentation or actual fraud by the defendant, or give any evidence that any single person was deceived. It is enough if in the opinion of the judge the symbol or device or get-up used by the defendant is one which so closely resembles the symbol, device or get-up used by the complainant as to be likely to deceive the public."

See, also, International Silver Co. v. Rogers Corp'n, 66 N. J. Eq. 129, 57 Atl. 1037, 2 Ann. Cas. 407 et seq.

This statement of the rule is not, I think, in reality different from that prevailing in the federal courts, although differently expressed. In the Elgin Nat. Watch Co. Case, supra, Mr. Chief Justice Fuller said that in this class of cases (179 U. S. at page 674, 21 Sup. Ct. at page 274 [45 L. Ed. 365]):

"Such circumstances must be made out as will show wrongful intent in fact, or justify that inference from the inevitable consequences of the act complained of."

The Singer Case, among others, is cited for the rule thus stated. In that case it was said (163 U. S. on page 188, 16 Sup. Ct. on page 1009 [41 L. Ed. 118]):

"Where the name is one which has previously thereto come to indicate the source of manufacture of particular devices, the use of such name by another, unaccompanied with any precaution or indication, *in itself amounts to an artifice calculated to produce the deception alluded to in the foregoing adjudications.*"

And again it was said:

"He cannot resort to any artifice or do any act *calculated to mislead the public.*"

In Standard Paint Co. v. Trinidad Asphalt Co., supra, Mr. Justice McKenna said (220 U. S. 461, 31 Sup. Ct. 460 [55 L. Ed. 536]):

"The essence of such a wrong consists in the sale of the goods of one manufacturer or vendor for those of another. * * * It [the defendant] does not use the word 'Rubero' in such a way as to amount to a fraud on the public."

It has been uniformly held in the various circuits that it is not necessary that actual intent to defraud be shown. Van Houten v. Hooton Cocoa, etc., Co., 130 Fed. 600 (C. C. N. J.); Samson Cordage Works v. Puritan Cordage Mills, 211 Fed. 603, 128 C. C. A. 203, L. R. A. 1915F, 1107 (C. C. A. 6th Cir.); Florence Mfg. Co. v. Dowd, 178 Fed. 73, 101 C. C. A. 565 (C. C. A. 2d. Cir.); Scriven v. North, 134 Fed. 375, 67 C. C. A. 348 (C. C. A. 4th Cir.); Fuller v. Huff, 104 Fed. 141, 43 C. C. A. 453, 51 L. R. A. 332 (C. C. A. 2d Cir.). The rule, then, as I understand it, is that if one uses a word or words, which have acquired the secondary meaning beforementioned, in *such a way* as would be likely to deceive the public in believing that his goods are those of another, that it will be conclusively presumed that he intended to deceive and injure. If the presumption were rebuttable, and made to depend upon the actual intent of a party, in many cases the courts would be powerless to prevent deception, and to afford a remedy for what, in reality, would be a wrong. In applying the rule it is to be borne in mind that the likelihood of deception is not confined to the dealer (who would likely be able to distinguish); but the rule primarily seeks to protect the ordinary purchaser, or, in other words, the liability of the ultimate consumer to be misled must be reckoned with. Fuller v. Huff, supra; Samson Cordage Works v. Puritan Cordage Mills, supra, 211 Fed. 610, 128 C. C. A. 203, L. R. A. 1915F, 1107, and cases cited; Florence Mfg. Co. v. Dowd, supra; Scriven v. North, supra; Coca Cola Co. v. Gay-Ola Co., 200 Fed. 720, 723, 119 C. C. A. 164; International Silver Co. v. Rogers Corp'n, supra. Indeed, the rule would be of little practical use if it could be avoided by showing that dealers would not be deceived; for then the dealer could unrestrainedly perpetrate deception upon the ultimate consumer. So the courts have wisely required that the manufacturer must, in the first instance, take such precautions as will make it fairly impossible for a dealer to deceive an ordinarily cautious customer.

[4] It remains to consider the facts of this case in the light of these rules. In doing so it must be remembered that the plaintiff has now no exclusive right to use the Read process, or to the reputation for the superiority of the products of that process, whether the same has been acquired by its advertising or not. But it has the exclusive right to the reputation which *it* has acquired for the brushes manufactured by it according to the process. The defendant, as well as others, has the right to describe and advertise its brushes as made according to the rubber set process. The question, then, is: Has it done so in such a way as to mislead the public? In its catalogues it designates its brushes, which are made according to this process, as "Set in Rubber." It seems to me ridiculous to say that a description in a cata-

logue, prepared and distributed by the defendant, of goods as "Set in Rubber," would induce any one who saw that catalogue to believe that the goods therein described were manufactured by the plaintiff, because the catalogue shows, as clearly as it is possible to show anything, that the goods are manufactured by the defendant. To say that a name has acquired a secondary meaning, denoting the origin of manufacture, and at the same time to say that the use of those words in a catalogue of goods of another manufacture, would lead a person reading that catalogue to believe that the goods were manufactured by the first manufacturer, presents a contradiction which must destroy any secondary meaning of the word, because it would show that the secondary meaning was not that of origin, but of process of manufacture. See remarks of Chief Justice White in Singer Case, 163 U. S. 200, 16 Sup. Ct. 1002, 41 L. Ed. 118. The same would seem to apply in respect to billheads, letters, circulars, and advertisements other than display matter, where the full name of the manufacturer is given equal prominence with that of the descriptive words "Set in Rubber." But, when the marking on the brushes is considered, I think quite a different situation is presented. The words "Set in Rubber" are so similar to the word "Rubberset" that, when the former are found by an intending purchaser in the same place and in the same kind of characters on a brush as the latter word, as in this case, the natural result would be extreme liability of deception. The public, through the plaintiff's advertisements of various kinds, has become accustomed to seeing the word "Rubberset" embossed on the ferrule of the brushes advertised as manufactured by the plaintiff. The plaintiff was the first in the field to so mark them. It follows, therefore, that the embossing by the defendant on the ferrule of its brushes of the words "Set in Rubber" is such as would inevitably lead to deception, as the evidence demonstrates that it has, and hence constitutes unfair competition. The words are thus used not descriptively, but as a trade-name.

But it is insisted that, even if this is so, the use of the word "Devoe" on the ferrule of the brushes, in connection with the words "Set in Rubber," together with the marking of the name of the manufacturer on the handle, will prevent misapprehension upon the question of origin. This depends, to some extent, upon the meaning which the word "Devoe" has acquired in the public mind. Although the defendant has long been engaged in the manufacture of brushes, still the evidence shows, I think, that its reputation, so far as the public is concerned, is that of a manufacturer of paints. In addition the word "Devoe" might convey to the ordinary purchaser merely the name of a brand. I think the evidence demonstrates, as well as the probabilities based on common experience, that the word "Devoe," used as it is in connection with the words "Set in Rubber," would not sufficiently prevent misapprehension as to the origin of manufacture on the part of one who wished to buy a "Rubberset" brush manufactured by the plaintiff, and whose inclination to do so was brought about by the plaintiff's advertising. What has just been said applies to display matter furnished by the defendant and used in stores where its brushes are sold. A sign, such as was offered in evidence and

therein referred to as the "White Sign," which has on it only this, "Something New in Devoe Quality—Set in Rubber," and the picture of a brush with the words "Set in Rubber—Devoe" on the ferrule, would be quite as likely to deceive an intending purchaser as the words "Set in Rubber—Devoe" embossed on a brush.

The remaining question is, therefore, what specific relief the plaintiff is entitled to—relief which will protect it from injury, prevent deception of the public, and at the same time preserve the rights of the defendant. To preclude the use altogether of the words "Set in Rubber," because of their resemblance to the word "Rubberset," would be to give to the latter the full effect of a trade-mark, while denying its validity as such. This, so far as the federal courts, at least, are concerned, cannot be done. Herring-Hall-Marvin Safe Co. v. Hall's Safe Co., 208 U. S. 554, 559, 28 Sup. Ct. 350, 52 L. Ed. 616; Standard Paint Co. v. Trinidad Asphalt Co., supra, 200 U. S. 461, 31 Sup. Ct. 456, 55 L. Ed. 536; Yale & Towne Mfg. Co. v. Ford, 203 Fed. 707, 122 C. C. A. 12 (C. C. A. 3d Cir.). Nor was any such relief granted in Reddaway v. Banham, supra, but the defendant was permitted to use the name "Camel Hair Belting" under restrictions which would clearly indicate that the defendant's product was not that of the plaintiff. The rule which must govern the federal courts is that stated by Chief Justice White in the Singer Case, 163 U. S. 200, 16 Sup. Ct. 1002, 41 L. Ed. 118, that the word or words "must be accompanied with such indications that the thing manufactured is the work of the one making it, as will *unmistakably inform the public of that fact.*" This does not mean, of course, that one may "dress up" his goods like another. In order to "unmistakably inform the public" as to the origin, similar "dressing up" of goods may be enjoined, where, if it were permitted, even though accompanied with the name of the manufacturer, it would be likely to deceive.

I doubt not that in a proper case the use of words similar to those which have acquired a secondary meaning may be enjoined, when they in themselves are likely to deceive, even if accompanied by something else to indicate the source of origin, if other words will just as well describe the article. But I think that the words "Set in Rubber," when the former trade custom of describing the process of manufacture, as "cement set," "glue set," etc., is taken into consideration, are so aptly descriptive of the characteristics of a brush made according to that process, that to require the defendant to use other words to describe the character of its goods would be to encroach unduly upon its rights. The decisions of the Circuit Court of Appeals and the Supreme Court in the "Rubberoid" Case furnish an example of the extent to which the federal courts, at least, may not go in this respect. But to permit the defendant to use the words "Set in Rubber" in the manner in which it has used them on its brushes and in its display matter, as before shown, will inevitably lead to deception of the public and injury to the plaintiff. In order to prevent this deception and to "unmistakably inform the public" that its goods are not manufactured by the plaintiff, I think that the defendant must be restrained from the use at all of the words "Set in Rubber," or similar words, on or near the ferrule of any of the brushes which it manufactures,

except on the handle proper, in which latter place the full name of the manufacturer (not Devoe) must accompany them, and from using on any display matter, in its or other stores where brushes are sold, the words "Set in Rubber," or similar words, unless it accompanies such use by a conspicuous positive statement that the brushes are not manufactured by the Rubberset Company. This also applies to labels on boxes or other containers for brushes.

[5] The plaintiff will therefore be awarded an injunction in accordance with the above conclusions. It is also entitled to costs and damages. But, under the rule enunciated by the Circuit Court of Appeals of this Circuit in P. E. Sharpless Co. v. Lawrence, 213 Fed. 423, 130 C. C. A. 59, and which I think finds support in the recent opinion of the Supreme Court in Hamilton Brown Shoe Co. v. Wolf Bros. & Co., 240 U. S. 251, 36 Sup. Ct. 269, 60 L. Ed. 629 (Feb. 21, 1916), I do not think it is entitled to an accounting for profits, because I cannot find that the unfair competition was so "willful and fraudulent" as to justify the imposition of profits as a "punitive addition to the ordinary decree of compensatory damages."

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes