GEORGE W. TODD & CO. v. J. WHITAKER MFG. CO.

(District Court, E. D. Pennsylvania. August 31, 1915.)

No. 1223.

1. PATENTS ☞328—VALIDITY AND INFRINGEMENT—CHECK PROTECTOR DEVICE.

The Todd patent, No. 793,249, for a check protector device, discloses patentable invention in claims 1, 3, and 8. Claims 1 and 3 held infringed, claim 8 not infringed, and bill dismissed as to claim 5.

2. PATENTS ☞36—EVIDENCE OF INVENTION—COMMERCIAL SUCCESS.

Commercial success of a patented device is evidence which may be considered on the question of invention as of utility; and when the fact that in selling capacity it leads all others is coupled with the fact that the infringing device is the next best seller, it is persuasive of merit.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 40; Dec. Dig. ☞36.]

3. PATENTS ☞176—CONSTRUCTION OF CLAIMS—"CIRCUMFERENTIAL"—CHECK PROTECTOR DEVICE.

Etymologically "circumferential" is inclusive of spiral, and as used in a patent of a check protector device, consisting in part of ridges and depressions in the type circumferentially arranged, so as to mate with corresponding depressions and ridges in the platen and affording protection against the fraudulent raising of the amount by printing a limitation of the sum called for, it means more than carried around on a circle which is throughout on the same degree of latitude, and is not restricted to the expression of the thought of the plane of the circle described by a revolving point in the type face being kept at right angles to the axis of the drum and to the plane surface of the platen, but of the broader

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

thought of the ridges and depressions in type and platen being in registering position when they meet.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 250½–252; Dec. Dig. ⚏176.]

In Equity. Suit by George W. Todd & Co. against the J. Whitaker Manufacturing Company. On final hearing. Decree for complainant. See, also, 217 Fed. 319.

Cyrus N. Anderson, of Philadelphia, Pa., Frederick F. Church, of Rochester, N. Y., and Melville Church, of Washington, D. C., for plaintiff.

Howson & Howson, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. [1] The patent in question is for what is in a sense printing apparatus. The letters patent issued to plaintiff bear the date June 27, 1905, and the number 793,249. The bill makes the usual charges and contains the usual prayers, and the answer presents the usual defenses. The real controversy is over the inventive novelty of those features of plaintiff's device which are common to it and to the device of the defendant. The device may, with respect to the purpose of its use, be called a check protector. Protection is meant to be afforded against the fraudulent raising of the amount for which the check was issued, by printing upon it a limitation of the sum called for, and so preparing the part of the paper upon which this printing appears, that it cannot be altered without the alteration being revealed on inspection. In order to give practical utility to such a printing machine, the requirements lie upon the surface that it must not only be capable of doing the work assigned to it, but be easy of operation by any one, and sufficiently simple and durable in construction to withstand careless or even rough usage. The conception in the mind of the plaintiff inventor, as expressed in his application, was of a machine which would first disintegrate the material of the printing surface, by an embossing action, so that, when the ink was applied, the disrupted fibers would take it up by absorption, and the union would be so intimate that the printed impression would defy alteration. He accompanied his application with designs of a machine which would produce the results intended. His entry, evidenced by this application, upon this field of invention, had been preceded by the efforts of many others, as well as by prior efforts of his own. The prior efforts were directed, not merely to the accomplishment of the general purpose of inventing check protectors, but also to protectors designed to afford protection by much the same means as he proposed to employ in the patent applied for. These facts very much narrow the field of possible novelty. The necessity, which the problem presented, of so far mutilating the printing surface as to make further tampering with it practically impossible, and yet to so far preserve its integrity as to render it still capable of serving its original purpose, made room for the exercise of the inventive faculty in designing a printing machine which would meet both these ends and surpass other makes in facility of use and in durability.

The main purpose was effected by plaintiff's invention through providing alternate ridges and depressions in his type faces and like ridges and depressions in a common platen with which the several type surfaces came in forceful contact, the ridges and depressions of each being so positioned that when in printing contact the ridges of one would exactly meet the depressions of the other. Precise registration was called for both to secure the required dislocation of the fibers of the paper as well as to prevent destructive action of the ridges of the platen upon the type faces. This certainty of registration was his dominant thought. He secured it in one way and preferentially by arranging that each ridge of the platen be kept, through every stage of contact approach, exactly in the plane of rotation of the corresponding depression on the particular type presented for contact. The defendant's device does exactly what is done by that of the plaintiff. The departure is from neither the purpose nor the principle of operation of plaintiff's claimed invention, but only from plaintiff's preferential means of accomplishment, and the only difference in this respect worthy of comment is that in plaintiff's preferred device the hills and valleys of the type and platen are kept in this already described fitting position through every degree of the circle which a point in the periphery of the wheel describes in its revolution, while in the device of the defendant the hills and valleys are brought into fitting position at the time of printing contact. These different ways of accomplishing identity of result required the employment of different means. Plaintiff secured the required result in his commercial device by keeping the ridges and depressions of the type face in exact alignment with the mate depressions and ridges of the platen throughout the whole course of the revolution of the wheel. Defendant brought about this same marriage of hills and valleys in type and platen and made sure of the required alignment through the operation of a cam which was brought into action just before the moment of contact.

The means by which plaintiff, in his shown device, preserved this alignment throughout the operating action and the language employed to describe it, has supplied the source of an abundant flow of argumentation over the identity of operation and the equivalency of the means which defendant has adopted to produce the same result at the time of impingement of the parts. Plaintiff describes his conception of this preferred means to be to first provide oppositive mates of hills and valleys on the individual type faces and on a universal platen, and then to make sure of the marriage through plighting their troth by means of having the hills of one in exact parallelism with the valleys of the other, and all kept during the whole revolution of the drum at right angles to both the plane of the platen and the axis of the drum which carries the type. By a figure of speech or a mental picture of the hills and valleys of each type as extended to encircle the drum, these hills and valleys are described as "circumferentially arranged grooves," and the hills and valleys of the type character are kept in alignment with the valleys and hills of the platen, or "the co-operating portions of the type wheel and platen are kept in register," by having the platen fixed and stationary and all movement of the ridges of the

type faces laterally with respect to the frame of the machine, or longitudinally with respect to the axis of the drum, prevented. The outcome is a true marriage of these "co-operating parts." The defendant brings about the same marriage. The ceremony, however, differs. The difference may have been introduced as an improvement in mechanical construction, or merely as a difference. The direction angle of projections and grooves, instead of being a right angle to the axis of the drum and plane of the platen, is diagonal. The path, which a point in any ridge on the type surface would describe in a revolution of the drum, is spiral.

[3] In the broader aspect of the claim to invention, some importance may be ascribed to the point that etymologically "circumferential" is inclusive of "spiral"; but in this especial feature the things described differ. "Circumferential," as the word is used in describing plaintiff's preferred device, means something more than carried around. It means a circle which is throughout on the same degree of latitude. From this idea the defendant departed. Defendant also made another departure from the ideas incorporated into this make of plaintiff's device. Plaintiff pledged this marriage of parts by always keeping, as has been several times stated, the parts in mating position. He therefore forbade any shift in the path of approach of the parts. Defendant called for a deflection from the path marked out by plaintiff, and then forced a return to it by a shifting movement at the end of the journey. There is also another difference (to which, however, no importance is attached), in that in the one device the advance toward union is made by the type and in the other by the platen.

We have now reached a point from which can be viewed the thing over which these parties are in controversy. We have not space for the adequate discussion of the reasons which lead up to the conclusions reached. We must, therefore, content ourselves with their statement and the formulation of the findings made, leaving the support or denial of the soundness of these conclusions to the able hands of counsel. These conclusions will be stated, first as to the inventive merits disclosed by the application, and then as to the special claims of exclusive rights. Do the facts of the case evidence invention? The dissection of the patented device and the tracing of each feature to its origin is forbidden by the limitations of an opinion, but a few may be used for illustrative purposes. The claim to invention, let it be remembered, is not in the creation of a check protector device, but in the pioneer conception of such a collocation of the features embraced in the patented structure that a fresh value issues out of, not the mere bringing of the elements of construction together, but out of the particular combination achieved. Many of these elements are old. All of them may be asserted to be old, without advancing to a denial of the inventive merit, claim of which is made. The feature of a dislocation of the fibers of the paper to such an extent as to forestall further disturbance was a possession of the prior art, as was also the protection afforded by a printed limitation of the amount of the check. It may be conceded that the added security of using these two forms of protection in combination had been recognized.

There still remained open to investigators the means of breaking up the printing surface of the paper. Plaintiff claims originality in his method of accomplishing this. It is asserted that he was anticipated in the thought of having mating serrations on platen and type surfaces. The Patent Office model accompanying the application for one of the prior patents now shows this feature. How far its instant presence is the product of inventive design in the original construction of the model, and how far it is the blind product of frequent contact of type with platen, cannot be found with certainty; but, even if the novelty of this feature be rejected, we still have the feature of assuring exact registration of the crushing parts, and poured around all we have the enveloping fact of a combination of features which is not disclosed by the prior art and not to be found elsewhere than in the devices of the plaintiff and defendant.

[2] In the whole device there can be sensed the presence of that subtle something which evidences the existence of a true combination, as distinguished from the mere bringing together of known elements. Its existence and the new value imparted is further evidenced by its commercial recognition. A fair apportionment of credit for a commercial success among the factors which contributed is difficult. It is the community product, when each enters into it, of inventive merit, mechanical fitness, the arts of the advertiser, and the genius for persuading of the sales agent. The value of a large volume of sales of any device as an evidential fact is always open to attack by a denial that inventive merit entered into it. Nevertheless it is evidence, and when coupled with the dual fact that its selling capacity surpassed that of the other devices having all the other aids, and that the infringing device has also proved itself to be a second "best seller," it becomes persuasive of merit in the device. A denial by an infringer of inventive merit (unless accompanied with proof of anticipation), like a denial of utility, is short in convincing power. It is the most trite and commonplace of sayings that imitation is the sincerest form of flattery, and every infringer pays unintended and perhaps unconscious tribute to the merits of the invention which he has appropriated.

This plaintiff holds letters patent for his invention. The letters patent confer the right, and prima facie justify the finding that he possesses the exclusive right of manufacture, use, and sale. The patent laws, it is true, confer this right only as a reward of merit, and the price exacted is a just claim to original creation. Lack of invention invalidates the patent, but its absence must be established by proofs. Just here comes in a distinction, in the character of the proofs called for, which finds a lodgment in the facts of this case. The ultimate fact which makes for the invalidity of a patent is, in the aspect of the defense which we are now considering, that the patentee was not the first inventor. If this is evidenced by the other fact of prior patent, or printed and published description, this other fact of itself calls for a refusal of letters patent, or invalidates the patent, if issued. If priority of invention is otherwise sought to be

shown as a fact to invalidate the grant of letters patent, the proof of it must be convincing. For illustration, if the Hendricks application or other printed publication had described the inventive feature of the plaintiff's device of marriable serrations in platen and type, this would, without more, invalidate any patent granted to Todd on this ground; but the existence of a model showing this feature, undescribed in any publication, must not only be proven to exist, but also to have antedated the Todd design. The weight to be given to the findings of the Patent Office properly varies in accordance with the extent to which the evidence, on which the defense made to the validity of the patent depends, was before the examiner. In this case, we feel that the grant of letters patent is sufficient, if indeed required, to incline the scale in favor of the plaintiff.

It only remains to interpret the claims in issue and determine the question of their allowance. We interpret and construe claim 1 as not limited to plaintiff's preferred structure, but as embracing that of defendant, and sustain the claim as allowed by the Patent Office. The word "circumferential," as here used, is inclusive of "spiral," and is not restricted to the expression of the thought of the plane of the circle described by a revolving point in the type face being kept at right angles to the axis of the drum and to the plane surface of the platen, but of the broader thought of the ridges and depressions in type and platen being in registering position when they meet. This finding is based in part upon the fact that this seems to be the differentiation of the phraseology employed in claim 1 and claim 2. The latter, although abandoned as a claim, is still in the case for interpretative use. Defendant has incorporated in his device this feature of the combination claim of claim 1 as distinguished from claim 2.

Claim 3 enlarges the scope of the combination by not restricting it to include only type characters forming the surface of a revolving drum, but extending it to any form of type support and brings into the combination type characters formed by parallel serrations, instead of merely having such serrations, and also an inking device for applying ink to the type characters. Claim 5 is the broad claim of the feature of serrations on both type and platen corresponding and co-operating each with the other, but not limited to the one form of parallelism. Claim 8 is a like broad claim to the feature, in machines of the cylindrical type support variety, of the serrations of type and platen being kept in register throughout the revolving movement by which type and platen are brought together. The feature of the exact register of the serrated surfaces of type and platen being secured when in contact is the keystone of the arch of plaintiff's combination. It is the cementing ingredient of the combination. Without it we have merely a bringing together of known features, making no call upon the inventive faculty. With it we have a true combination, and have a new and added value, different from and beyond that of the aggregate of the parts. Claims 1, 3, and 8 each include this. Claim 5 does not. Claim 8, however, is limited to a special form of construction of which defendant has not made use.

Claims 1 and 3 are sustained, and found to have been infringed. Claim 5 is not sustained. and plaintiff's rights under 8 are found not to have been invaded. The form of a decree sustaining the validity of the patent under claims 1 and 3, and its infringement, may be submitted.