### HEDMAN MFG. CO. et al. v. TODD PROTECTOGRAPH CO.

(Circuit Court of Appeals, Seventh Circuit. March 16, 1920.)

No. 2722.

1. **Patents ☞328—793,249, for check protecting printing apparatus valid and infringed.**

   The Todd patent, No. 793,249, for printing apparatus, designed to protect checks and drafts, *held* not anticipated, valid, and infringed.

2. **Equity ☞65(2)—Unauthorized unfair practices by agent does not bar principal from equitable relief.**

   Unfair business practices on the part of an agent, unknown to and unauthorized by his principal, *held* not to preclude the principal, under the doctrine of "unclean hands," from equitable relief against the person injured for unfair practices by such person against the principal.

3. **Trade-marks and trade-names ☞84—Infringer of patent not entitled to protection against unfair competition.**

   A court, having enjoined defendant as an infringer of plaintiff's patent, cannot grant it protective relief in marketing its product against unfair methods of competition by plaintiff.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit by the Todd Protectograph Company against the Hedman Manufacturing Company and others. Decree for complainant, and defendants appeal. Affirmed.

For opinion below, see 254 Fed. 829.

The decree appealed from found valid and infringed claims 3, 4, and 5 of United States patent No. 793,249, to Todd, June 27, 1905, for improvements in printing apparatus designed to protect checks, drafts, and the like from alteration, by means of printing upon the instrument figures or numerals in such manner as to render impossible, or at least to increase the difficulty of, successfully altering them. The decree also awarded injunction against appellant for unfair competition.

The claims are:

"3. In a printing apparatus, the combination with the type support provided with printing characters the impression surfaces of which are made up

of a plurality of parallel ridges having continuous ink-receiving surfaces between them, and an inking device for supplying ink to the characters, of a platen arranged to co-operate with said characters having projecting portions arranged to register with the ink-receiving surfaces and depressions arranged to receive the ridges of the printing characters.

"4. In a printing apparatus, the combination with the type support provided with printing characters the impression surfaces of which are formed with a plurality of elongated ridges the adjacent sides of which are inclined to form flat ink-receiving surfaces, and an inking device for supplying ink to the characters, of a platen co-operating with said characters having an impression surface formed to receive the ridges of the printing characters, and having projections adapted to register with the inclined printing surfaces of the characters.

"5. In a printing apparatus, the combination with the type support provided with printing characters the printing surfaces of which are formed with a series of alternately arranged ridges and depressions, and an inking device for supplying ink to the surfaces of the characters, of a platen co-operating with the characters having an impression surface formed to correspond with the impression surfaces of the characters."

Lynn A. Williams, of Chicago, Ill., for appellants.
Edward Rector, of Chicago, Ill., for appellee.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). [1] The claims in controversy have to do, not with the mechanism whereby the printing means is caused to move and make the impression, but with the type itself and the platen with which it coacts in producing the impression upon the interposed instrument. The platen is of metal, having across its surface a regular series of parallel grooves or ridges, of shape to receive corresponding grooves or ridges across the type. The characters may be of any desired form. The following patent drawing 3 illustrates characters having the ridges across them, and Figure 5 shows cross-section of the type 3 in the process of being pressed down upon the intervening paper into the corresponding ridges of the platen 4.

Fig. 3.

Fig. 5

Thus the type, being first thoroughly inked, not only prints the character upon the face of instrument, but at the same time presses the paper between the ridges, lacerating it at the places where the ridges of the type press into the corresponding depressions of the platen, and the ink penetrates and impregnates the lacerated or several edges, so that alteration of the printed part is made far more difficult than with ordinary printing upon an unmutilated surface.

Appellants' apparatus, comprising what may be termed the printing press, is radically different from that of the patent; but, when the type is arranged for printing, there is presented a series of characters of any desired shape, with parallel grooves and ridges across them, designed to be pressed down upon the paper, which rests upon a platen having corresponding grooves and ridges to receive those of the type, lacerating and printing the paper in the same manner as is done by the type and platen of the patent. The only difference is found in the fact that in the description of the patent the grooves and ridges are shown perpendicularly across the characters, as appears in the illustration, while in the alleged infringing device they run diagonally, resulting in a corresponding cutting or laceration of the characters on the instrument, as in the following cut of an impression made by appellants' machine:

Appellants deny infringement on the ground, first, that the patent did not contemplate ridges running otherwise than as they are shown, and that the diagonal ridges of the alleged infringing device are wholly without the purview of the patent; and, second, because appellants' device follows the teaching of the prior art and not of the patent.

In the claims there is no limitation respecting the inclination of the ridges with reference to the letters; and while the patent drawings show no variation from ridges perpendicularly across the characters, we do not perceive wherein the law of the patent device is such that the ridges may not be inclined, if for any reason inclination is preferred. We do not think the diagonal ridging of the platen and type evades the spirit of the invention or the letter of the grant.

In support of the contention that appellants' device follows only the prior art, many patents are cited, but the ones mainly relied on are those of Beebe and Hendrick.

The Beebe patents are Nos. 554,613, 1896, 576,999, 1897, and 594,-319, 1897. The nearest of these is the last one, which shows type consisting of regularly spaced punch points of conventional designs such as dots, diamond shapes, circles, squares, and the like, arranged in the general form of the desired character. The die thus formed by the type fits into and coacts with a corresponding matrix or platen, the surface of which is a regularly arranged series of corresponding indentations to receive the punch points of the type. Thus this universal platen will serve as the matrix for any character which may

be formed by the employment of the punch points. The interposed paper pressed between the type and platen is thus embossed and serrated, forming the character so made by the series of points, and the inking of the points causes the paper to be inked at the points of indentation. The difference in the devices is indicated by the difference in the impressions produced. In Beebe it is a character composed of a series of regular conventional designs, arranged as nearly as may be in form of the letter or figure, while in the alleged infringing devices the characters are in usual normal or any desired form, with a series of parallel ridges across them. While the difference is not broad, it is sufficient to overcome the contention that appellee's device follows the Beebe patents.

The Hendrick patent, No. 104,148, 1870, claims only a "printing apparatus with a platen having a cutting, perforating or scarifying surface." The patent drawings and specifications show three forms of machines embodying the invention. The feature which appellants stress is the platen which Hendrick describes as having "parallel cutting edges," which his Figure 5 shows to be diagonal (D), substantially as the platen in the alleged infringing device, and, for that matter, differing only in the inclination from the platen of the patent drawings. But a reading of the specifications and inspection of the drawings make it very plain that the essential concept of the Hendrick invention was only the cutting edges or points of the platen, and that correspondingly edged or ridged type was not only without his concept, but is positively excluded. The scheme of that patent was to cause the cutting of the paper to be done from below, in such manner as in no way to disturb the printing surface above. After describing the operation of cutting from below by means of the ridges or points of the platen, the specification says that—

"The paper where thus printed will be smooth, and any matter which may have been previously written or printed upon it will not be rendered indistinct."

The intention of excluding any but regular type, unbroken by serrations or otherwise, is further manifested in the specification, where it is stated:

"I am aware that types have been produced of a great number of fine points or punches and used in combination with a soft platen for pricking letters * * * through the paper, but owing to the liability of such types becoming injured in the breaking of their points, and for other reasons such types are objectionable."

And it is pointed out that having the sharp ridges or points on the surface of the platen obviates this objection of having them on the type; and it is further stated that, if in use the cutting edges or points on the platen become dulled, a new platen can be substituted. This last would be unnecessary where the printing characters had the ridges corresponding with and fitting into the depressions in the platen.

In at least one of the figures there shown, and possibly contemplated in others, there appears an ink ribbon just under the type, upon which the type would first strike in its descent upon the paper. This,

also, would militate against the plan of type ridges to fit into the depressions of the platen, for the ribbon would thus also be forced with the paper between the ridges, thereby not only interfering with the action on the paper, but causing speedy destruction of the ribbon.

Upon the hearing appellants conducted an interesting experiment with an ordinary hand-numbering machine, in which they had placed a steel platen with sharp diagonal ridges upon which the type would strike. It was claimed that this produced an example of the Hendrick machine, and the experiment consisted in inserting the paper in its proper place, and striking the ordinarily sharp blow for printing, whereby not only were the characters printed upon the paper, but the blow on the cutting edges of the platen produced on the originally smooth surfaces of the brass type corresponding ridges, which thereafter were in register with those of the platen, and causing the paper to be ridged and printed substantially as with appellants' machine. The insistence is that the Hendrick machine in its use necessarily produced those corresponding ridges in the type, and there would then be present all the essential elements of appellee's machine, as well as of the claims in question, viz. the grooved and ridged type coacting with corresponding ridges and grooves in the platen. If such operation were part of the plan of Hendrick's invention, the character of the type metal would be an important feature, so as to insure through use the corresponding ridges upon the type through contact with the platen. On this subject the specifications are silent, and the drawings show no serrations on the illustrated characters, and, as pointed out, the law of that patent excludes the ridging of the type surface.

We cannot consider experience from actual use of Hendrick machines, since it does not appear from the evidence that such were ever made or used. The Hendrick invention, while serving to narrow the field in this art, even then quite narrow, and still further restricted at the time of Todd's invention, does not justify appellants' contention that its machine follows the Hendrick invention, nor relieve it from the charge of infringement of the claims in issue. The differences pointed out between the prior patent devices referred to and those of appellee likewise patentably distinguish those prior patent devices from the claims of the patent in issue, and overcome suggestion of the invalidity of the claims on such prior art.

The views above expressed are in general consonance with the conclusions reached by other courts wherein this patent has been in issue. Todd v. Whitaker (D. C.) 226 Fed. 791; Whitaker v. Todd, 232 Fed. 714, 146 C. C. A. 640, Todd v. New Era Co. (D. C.) 236 Fed. 768. Some of these cases have been reviewed in the comprehensive opinion herein of the District Court, appearing at 254 Fed. 829.

[2] Complaint is made respecting that part of the decree finding the issue of unfair competition against appellants, and awarding appellee an injunction. It is not contended that evidence of appellants' unfair trade practices toward appellee is wanting, but it is urged that appellee was likewise guilty of unfair trade practices toward

appellants, and that upon this issue appellee's hands were unclean, and decree in its favor was therefore not proper.

The District Court, which heard the witnesses, concluded that while there were such unfair practices on appellee's part, they were not only provoked by the prior improper conduct of appellants, but found that under the evidence the conduct of appellee which might be said to be unfair, was unknown to appellee itself or to any of its officers, but was by agents of appellee, who were not authorized by appellee to indulge in such practices toward appellants. This raises the question whether unfair business practices on the part of an agent, unknown to and unauthorized by his principal, and for which the principal might be liable in damages and to injunctive relief against continuance of the conduct, would, on the "unclean hands" doctrine, prevent the principal from obtaining equitable relief against the person thus injured by the acts of the agents for unfair trade practices of such person toward the principal. The authorities upon this question are not numerous. A case quite in point is that of Vulcan Detinning Co. v. American Can Co., 72 N. J: Eq. 387, 67 Atl. 339, 12 L. R. A. (N. S.) 102, wherein it was said:

"That the knowledge possessed by an agent, but not acquired by him while acting for his principal, will under certain conditions be imputed to the latter, is in the nature of a presumption indulged in by courts in working out the rights of litigating parties. * * * An essential part of the presumption in question is that the principal is ignorant of the knowledge that has been casually acquired by his agent. * * * True, he may be bound by it in the sense that his legal rights may be determined with reference to the knowledge with which he is thus chargeable; but his conscience is void of offense, and hence it cannot with any propriety be said that his hands are unclean, for 'unclean hands,' within the meaning of the maxim of equity, is a figurative description of a class of suitors to whom a court of equity as a court of conscience will not even listen, because the conduct of such suitors is itself unconscionable—i. e., morally reprehensible as to known facts."

Associated Press v. International News Service (D. C.) 240 Fed. 983 is to like effect.

We regard this statement of the law as sound, and we do not feel warranted in disturbing the conclusion reached by the District Court respecting this phase of the case, either upon the facts or its application thereto of the law.

[3] Respecting the contention that relief should have been granted appellants upon their showing of appellee's unfair trade competition, whether by itself or through its agents, it is sufficient to say that, having found appellants guilty of infringement of appellee's patent, the court could not by injunction or otherwise afford appellants protection in their further marketing of the infringing devices, and thus the injunctive relief asked in appellants' counterclaim was properly denied.

The decree of the District Court is affirmed.